**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-323 (GJP)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK HOUCK,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its counsel of record, respectfully submits this memorandum of law in opposition to the defendant's motion to dismiss. (ECF No. 24). Because the defendant has not shown that he is entitled to dismissal under any of the arguments he raised, the motion to dismiss must be denied.

**Background**

Defendant Mark Houck is charged with violating the Freedom of Access to Clinic Entrances Act (FACE Act), 18 U.S.C. § 248(a)(1) (Counts One and Two). (ECF No. 1). These charges arise out of two assaults that occurred at a Planned Parenthood in Philadelphia, Pennsylvania ("PPC"), on October 13, 2021. According to the indictment, the defendant used *force* against B.L.[1] with the *intent* to injure, intimidate, and interfere with B.L. *because* B.L. was a provider of reproductive health services. Count One of the indictment alleges that the defendant shoved B.L. to the ground as B.L. attempted to escort two PPC patients from the clinic. *Id.* Count Two alleges that after that assault, the defendant verbally confronted B.L. and then laid hands on

---

[1] The Government's indictment refers to the victim by his initials—B.L.—to protect his privacy. Although the defendant releases B.L.'s full name in his motion to dismiss, the Government will continue to protect B.L.'s identity in its pleadings.

the victim again, forcefully shoving B.L. to the ground in front of the PPC, causing B.L. to fall to the ground. *Id*. The assault described in Count Two caused bodily injury to B.L. *Id*.

**<u>Argument</u>**

The defendant's motion to dismiss must be denied as meritless. The defendant puts forth a mix of intertwined facial and as-applied challenges to the indictment under 18 U.S.C. § 248(a)(1). All of his arguments fail because the United States sufficiently alleged in the indictment a violation of § 248(a)(1), and a court may not dismiss a properly drafted indictment on speculation that the Government may not be able to prove the allegations made therein. The United States has also not selectively enforced § 248(a)(1) nor has the defendant met his burden for dismissal under this theory. Lastly, § 248 is constitutional and does not burden free speech or the free exercise of religion, and remains a valid exercise of Congress' Commerce Clause authority.

## I.     THE INDICTMENT IS SUFFICENT AND THE DEFENDANT'S CONTRARY ARGUMENTS ARE IMPROPER ATTEMPTS TO CHALLENGE THE SUFFICIENCY OF THE EVIDENCE

As a threshold issue, the defendant attempts to improperly challenge the indictment's sufficiency by disputing the facts alleged therein. In ruling on the pending motion to dismiss, this Court must ignore these factual disputes. As explained more fully below, a defendant's disagreement with the way the facts are alleged in an indictment does not affect the indictment's validity.

The Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same

offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment "returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial on the charges on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956);[2] *United States v. Fisher*, 871 F.2d 444, 451 (3d Cir. 1989) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)); *United States v. Teva Pharms. USA, Inc.*, No. CR 20-200, 2022 WL 7528898, at *3 (E.D. Pa. Oct. 13, 2022).

A ruling on a motion to dismiss is thus not a "permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (holding that dismissal of an indictment "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges"); *Teva Pharms. USA, Inc.*, 2022 WL 7528898, at *2 ("The law is clear that an indictment cannot be challenged based on inadequacy or insufficiency of the evidence presented to the grand jury.").

Accordingly, "[i]n considering a defense motion to dismiss an indictment, the [] court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990); *see also Costello*, 350 U.S. at 363-364 ("It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules" to "establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence."). Under controlling Third Circuit jurisprudence, this standard would apply even where a defendant's counter assertion of the facts raises questions about how the government will prove its case. *See United States v. Menendez*,

---

[2] The only exception is if there "have been fundamental errors in which the structural protections of the grand jury have been so compromised as to render the proceeding fundamentally unfair allowing the presumption of prejudice." *United States v. Fisher*, 871 F.2d 444, 451 (3d Cir. 1989).

831 F.3d 155, 175 (3d Cir. 2016) ("At the motion to dismiss stage, the District Court had to accept as true all allegations in the indictment, regardless of its uncertainty as to how the Government would prove those elements at trial.").

In this case, the defendant raises questions throughout his motion about the sufficiency of the evidence supporting the charged counts and seemingly asks this Court to make findings of facts in his favor. These arguments are improper and would result in a "preliminary trial," "interminable delay," and "add nothing to the assurance of a fair trial." *Costello*, 350 U.S. at 364 (indictments not open to challenge on ground that there was inadequate or incompetent evidence). Under clear Supreme Court and Third Circuit authority, this Court must decline the defendant's invitation to assess the underlying evidence, and deny the defendant's motion.[3]

### a. To Be Sufficient, an Indictment Need Not Detail All Evidence the Government Plans To Use To Prove a Defendant's Mental State.

In addition to his more general disagreement with the facts, the defendant explicitly argues, at § IV of his motion, that the Government cannot establish the intent element of § 248. (ECF No. 24, at 22-24). Whether the defendant had the necessary scienter to commit the charged crime is a factual element, and as explained above, it is for a properly instructed jury to resolve. To the extent that the defendant claims the indictment is defective because it does not contain specific facts supporting the elements of the charged offenses, his argument fails because the law does not require that an indictment cite all facts that the Government will use to prove its case. *See, e.g*., *United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir. 1991) ("[A]n indictment charging a statutory crime is sufficient if it substantially follows the language of the criminal statute."); *United States v. Maletteri*, 35 F.R.D. 225, 226 (E.D. Pa. 1964) ("The indictment need not be a complete summary

---

[3] For the record, the Government disputes the defendant's version of what took place and where on October 13, 2021; however, that remains an improper inquiry at this time and therefore the Government will not address the many disputed facts that arise in the defendant's motion to dismiss.

of all of the evidence which the government intends to use to sustain the averments of the indictment."); *United States v. Rodriguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019) ("[T]he government need not recite all of its evidence in the indictment.") (relying, in part, on *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). Indeed, doing so would violate Rule 7(c), which requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).

The indictment describes two separate assaults that took place on October 13, 2021, near and in front of the PPC between the defendant and B.L, with whom the defendant was familiar. Tracking the statutory language, the indictment alleges that the defendant, using force, intentionally injured, intimidated and interfered with B.L., and attempted to injure, intimidate, and interfere with B.L., because B.L. was and had been providing reproductive health services, and in order to injure, intimidate, and interfere with B.L. from providing reproductive health services, in violation of § 248(a)(l). (ECF No. 1). It provides the elements of the offense, sufficiently affords the defendant notice of the charges against which he must defend, and enables him to plead double jeopardy in future prosecutions for the same offense. *Hamling*, 418 U.S. at 117; *United States v. Sullivan*, No. 2:13-CR-00039, 2013 WL 3305217, at *8 (E.D. Pa. July 1, 2013) ("Whether the Government will successfully prove its case is not at issue here. However, at this time, a review of the indictment shows that the Government sufficiently alleged that Defendants intended to deprive the Commonwealth and the City of money or property."). Therefore, the indictment is sufficient and the defendant's motion to dismiss on this ground must be denied.

### b. The Government Need Not Allege or Prove the Defendant Interfered with Interstate Commerce Because It Is Not an Element of 18 U.S.C. § 248.

The defendant also seeks dismissal on the ground that the Government will not be able to prove that his conduct was in or affecting interstate or foreign commerce. (ECF No. 24, at 24, 30-

33). As explained more fully below, § 248 has been upheld as appropriate legislation enacted pursuant to Congress' authority under the Commerce Clause, and there is no requirement that, to obtain a conviction, the Government prove that the defendant's actions were in or affecting interstate or foreign commerce. The Government need only allege the elements of the charges against the defendant and sufficient facts to put him on notice as to the nature of those charges. *Id*.

Section 248(a)(1) of Title 18 prohibits "by force or threat of force or by physical obstruction, intentionally injur[ing], intimidat[ing] or interfer[ing] with or attempt[ing] to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." The statute does not require proof that an offense under Section 248(a)(1) is "in or affecting interstate commerce," although Congress' primary authority for enacting § 248 is derived from its authority under the Commerce Clause.[4] Therefore, the Government need not allege or prove interference with interstate commerce. *See United States v. Hill*, 893 F. Supp. 1034, 1037-38 (N.D. Fla. 1994) ("Hill's alternative argument that the government must prove a nexus with interstate commerce is unpersuasive . . . [as] it is not necessary for the statute itself to require that the illegal act affect or involve interstate commerce . . . . Nor is it necessary that a defendant convicted under the statute have performed an act affecting interstate commerce . . . . An interstate commerce element is not contained in the Act . . . and is not required. Whether Hill's acts or the activities of the clinic had an effect on interstate commerce is irrelevant, since the Act itself is properly based on the Commerce Clause.") (internal citations omitted). Thus, the defendant's motion to dismiss on this ground must be denied.

---

[4] See § IV below for a full discussion of the constitutionality of the enactment of § 248 under the Commerce Clause.

## II.   THE UNITED STATES HAS NOT SELECTIVELY PROSECUTED 18 U.S.C. § 248 AGAINST THE DEFENDANT AND THE DEFENDANT HAS NOT MET HIS BURDEN FOR DISMISSAL

This Court should likewise reject the defendant's argument, asserted in § I of his motion, that the indictment should be dismissed on the grounds of selective prosecution. (ECF No. 24, at 8-18).  The Government has not selectively prosecuted the defendant, and he has not met his burden for demonstrating selective prosecution, nor can he.

In general, "[t]he Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). If a prosecutor "has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Nevertheless, prosecutorial discretion has its limits and "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* at 608.

Because the "decision to prosecute is particularly ill-suited to judicial review," the standard for asserting such selective prosecution claims "is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). A defendant cannot succeed on a selective prosecution motion unless he meets his burden of proving, by *clear evidence*, that the prosecution at issue has *both* a discriminatory effect *and* purpose. *Id*. at 463-64; *see also Wayte*, 470 U.S. at 608-09; *see also United States v. Dubose*, No. CR 20-453-1-2-3, 2022 WL 3030831, at *8 (E.D. Pa. Aug. 1, 2022) (evaluating and denying claim of selective prosecution).[5]

---

[5] Even to obtain discovery on a selective prosecution theory, a defendant must produce "some evidence tending to show the existence" of a discriminatory effect *and* purpose. *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012). Indeed, courts "have taken great pains to explain that the standard is a demanding one" and that there is "a background presumption that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 463-64 (internal citations omitted).

Thus, to succeed on a selective prosecution claim, a defendant must meet a demanding two-pronged test. He must first show, by clear evidence, that the prosecution had a discriminatory effect by making a "credible showing" that similarly situated defendants of a different class were not prosecuted. *Armstrong*, 517 U.S. at 465; *see also United States v. Hedaithy*, 392 F.3d 580, 607 (3d Cir. 2004) (restating this test). Second, he must show, by clear evidence, that his prosecution was undertaken due to a discriminatory purpose by "show[ing] that the government chose to prosecute him 'on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right.'" *Dubose*, 2022 WL 3030831, at *8 (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). Here, the defendant has failed to establish either of the required elements by clear evidence and has failed to make a sufficient showing that warrants a dismissal of the indictment.

**a. The Defendant Has Failed To Produce Clear Evidence That the Government Prosecution Has a Discriminatory Effect.**

The defendant has failed to meet the first prong of the test because he has not made a credible showing that similarly situated defendants of a different class were not prosecuted; thus, he has not demonstrated a discriminatory effect. The fact that other defendants prosecuted for violating the FACE Act have had pro-life views avails him little. Members of a specific group "cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Terry v. Reno*, 101 F.3d 1412, 1420 (D.C. Cir. 1996) (quoting *United States v. Soderna*, 82 F.3d 1370, 1376 (7th Cir. 1996)). To satisfy the discriminatory effect element of the selective prosecution test, defendants must make a "credible showing" that similarly situated defendants of a different class were not prosecuted. *Armstrong*, 517 U.S. at 465; *see also Hedaithy*, 392 F.3d at 607 (restating this test).

Here, the defendant's argument distills to an allegation that he is being prosecuted for being pro-life, while actors who engage in pro-choice violence are not. However, he has not provided sufficient evidence to support this assertion and therefore is not entitled to a dismissal of the indictment.

To support his theory of discriminatory effect, the defendant cites to a Department of Justice website identifying some § 248 prosecutions, (ECF No. 24, at 12, n. 5-6), and compares it to news articles discussing recent attacks on pregnancy resource and other pro-life centers that have yet to be prosecuted (*e.g.*, ECF No. 24, at 13, n. 7-8). In doing so, he fails to assess how any specific cases of violence or vandalism against the pro-life centers discussed in those news articles fall under § 248(a)(1). To meet his burden under *Armstrong*, the defendant must, at a bare minimum, allege a specific instance in which an identified pro-choice individual violated § 248(a)(1) and was not investigated or prosecuted. *Armstrong*, 517 U.S. at 470 (finding that the defendants failed to meet the threshold for discovery because although the study they relied on showed that all defendants charged in the district with a particular offense during the preceding year were Black, defendants nonetheless "failed to identify individuals who were not [B]lack and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted"); *Hedaithy*, 392 F.3d at 608 (news articles demonstrating that much more cheating occurred than was prosecuted did not demonstrate that "*similarly situated* persons were treated differently"). The defendant has not done so; therefore, he has not shown that there is a Government prosecution policy that has the effect of discriminating against him based on his pro-life views.

The news articles the defendant cites prove nothing. First, many of the alleged "one hundred and fifty acts" cited by the defendant (ECF No. 24, at 13) are not, based on the scant

descriptions he provides, violations of § 248(a)(1).[6] Second, in recent months the Government has publicly announced federal investigations into at least four of these cited incidents. Upon further investigation, it is possible that some of these incidents could potentially be charged under § 248(a)(1).[7] Evidence of these investigations and potential prosecutions directly contradict the defendant's claim that the Government is prosecuting only pro-life individuals based on their religion/viewpoint. Demonstrably, the Government will investigate and, where warranted, prosecute any individual who violates federal law, including § 248, by attacking a facility that provides reproductive health services (including those that are pro-life).

Because the defendant has failed to demonstrate that he is similarly situated to even a single perpetrator of a possible § 248(a)(1) violation that the Government has refused to prosecute and, indeed, because the Government is investigating potential violations of federal law, including § 248, committed against pro-life centers, he has not met the threshold for dismissal.

**b.   The Defendant Has Not Provided Any Evidence That the Government's Prosecutions Were Motivated by Discriminatory Purpose.**

Even if the defendant could show a discriminatory effect (and the Government maintains that he cannot), his argument fails because he has not met his burden under the second prong of the selective prosecution test. He has failed to show that any policy that resulted in a discriminatory effect was implemented for a discriminatory purpose.

---

[6] For example, not all of the acts of vandalism described in the articles involved force, a threat of force, or physical obstruction, as required by § 248(a)(1). Some might qualify as prosecutable under §§ 247, or 248(a)(3), but the defendant has not been charged with any such violations.

[7] *FBI Buffalo Offering $25,000 Reward for Information in the CompassCare Arson Investigation*, FBI BUFFALO (Nov. 14, 2022), https://www.fbi.gov/contact-us/field-offices/buffalo/news/press-releases/fbi-buffalo-offering-25000-reward-for-information-in-the-compasscare-arson-investigation; *Crisis Pregnancy Center Arson*, FBI MOST WANTED (June 25, 2022), https://www.fbi.gov/wanted/seeking-info/crisis-pregnancy-center-arson; Lauren Aratani, *Officials Investigate Fire That Damaged An Oregon 'Pregnancy Crisis Center'*, THE GUARDIAN (June 11, 2022), https://www.theguardian.com/us-news/2022/jun/11/fire-pregnancy-crisis-center-oregon-portland; Richard Luscombe, *Pro-Choice Group Claims Arson Attack On Wisconsin Anti-Abortion Office*, THE GUARDIAN (May 10, 2022), https://www.theguardian.com/us-news/2022/may/10/abortion-arson-attack-wisconsin-pro-choice-janes-revenge.

Establishing a discriminatory purpose, which is necessary to prove an equal protection violation, requires more than proof that a government actor took a course of action volitionally or with awareness of consequences. Rather, acting with a discriminatory purpose indicates that a decision-maker selected or reaffirmed a particular course of action (at least in part) "*because of*, not merely in spite of, its adverse effects upon [an] identifiable group." *McCleskey v. Kemp*, 481 U.S. 279 (1987) (emphasis added). The defendant offers no evidence in support of his contention that the Government chose to prosecute him because he is pro-life, and therefore is not entitled to dismissal of the indictment.

The defendant's argument that the Government acted with a discriminatory purpose in prosecuting him folds back on his disagreement with the facts alleged in the indictment. The defendant maintains that he, not B.L., is the real victim of any FACE Act violation and that, by choosing to prosecute him instead of B.L., the Government is engaging in selective prosecution. The Government anticipates that the evidence at trial will prove beyond a reasonable doubt that B.L. is the victim of the offense and that the defendant is the perpetrator.[8] Regardless, the defendant's assertions that amount to factual disputes are insufficient to make a "credible showing" that similarly situated defendants of a different class were not prosecuted. Accordingly, the defendant's motion fails to establish the second prong of the *Armstrong* test as well. For this reason, he is not entitled to dismissal of the indictment based upon selective prosecution.

---

[8] As noted above, it is improper for this Court to weigh these unsupported facts at this juncture. Most, if not all, of the defendant's arguments appear to rely on disputed facts, which as noted in § I above, the Government will have to prove at trial.

### III.   THE UNITED STATES HAS NOT ENGAGED IN VIEWPOINT DISCRIMINATION AND 18 U.S.C. § 248 DOES NOT VIOLATE THE FIRST AMENDMENT

The defendant also argues that by indicting him, the Government has improperly engaged in viewpoint discrimination. (ECF No. 24, at 10-11, 16-18). This argument fails because § 248 allows for peaceful demonstration and because its protections apply both at facilities that provide reproductive health care, including abortion-related services, and at facilities that provide pro-life counseling and similar services to pregnant women.

On its face, § 248 regulates conduct rather than speech: it prohibits the use of force, the threat of force, and physical obstruction, and specifically excludes peaceful expressive conduct from its reach. Persons remain free to engage in peaceful and non-obstructive communication of their pro-life message outside reproductive health facilities. Every appeals court that has addressed this issue, including the Third Circuit, has held that § 248 does not violate the First Amendment. *United States v. Gregg*, 226 F.3d 253, 267 (3d Cir. 2000); *Norton v. Ashcroft*, 298 F.3d 547, 552 (6th Cir. 2002); *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998); *United States v. Wilson*, 154 F.3d 658, 664 (7th Cir. 1998); *United States v. Bird*, 124 F.3d 667, 683–84 (5th Cir. 1997); *Terry v. Reno*, 101 F.3d 1412, 1418–1421 (D.C. Cir. 1996); *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996); *United States v. Soderna*, 82 F.3d 1370, 1376 (7th Cir. 1996); *Cheffer v. Reno*, 55 F.3d 1517, 1521–22 (11th Cir. 1995); *American Life League, Inc. v. Reno*, 47 F.3d 642, 648–52 (4th Cir. 1995). Moreover, "there is no disparate-impact theory in First Amendment law." *Dinwiddie*, 76 F.3d at 923; *see also Terry*, 101 F.3d at 1419–20 (same).

It is important to note that Section 248 was written to be viewpoint neutral. It does not apply solely to facilities that provide a specific type of reproductive health care and/or services. Instead, it applies to all reproductive health services. *See* § 248(e)(5). The defendant's argument

is not novel. Other defendants have alleged—unsuccessfully—that § 248 unconstitutionally targets defendants based upon their viewpoint. As already directly addressed by several courts, "[t]hat the majority of those whose conduct the statute punishes probably oppose abortion does not call the statute's neutrality into question." *Terry*, 101 F.3d at 1419; *see also Wilson*, 154 F.3d at 664 (same); *Dinwiddie*, 76 F.3d at 923 (same); *Soderna*, 82 F.3d at 1376 (same); *United States v. Weslin*, 964 F. Supp. 83, 85 (W.D.N.Y. 1997), *aff'd*, 156 F.3d 292 (2d Cir. 1998) (same).

To the extent that the defendant is claiming "viewpoint discrimination" as a separate basis for dismissal (and not as a way of defining the protected group he is a part of that is subject to selective prosecution), his motion must also be denied. The defendant's speech has not been targeted or implicated at all: he is charged with violating § 248 because of his *conduct*, namely, his use of physical force against B.L. Accordingly, his motion should be denied on this theory.

## IV.   SECTION 248 OF TITLE 18 DOES NOT VIOLATE THE RELIGIOUS FREEDOM RESTORATION ACT ("RFRA")

The defendant further urges this Court to dismiss the indictment on the ground that it violates the Religious Freedom Restoration Act ("RFRA"). (ECF No. 24, at 18-21). His argument is both improperly alleged and contrary to the holdings from every court that has considered this issue.

RFRA provides that the Government may not "substantially burden a person's exercise of religion" unless it "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000bb-1.

The defendant's RFRA argument largely consists of an accounting of why he believes B.L. obstructed the defendant's own free exercise of religion, asserting that he was protecting his son from B.L. (ECF No. 24, at 19-20). B.L., however, is not the Government or a government actor.

He is thus not subject to RFRA, 42 U.S.C. § 2000bb-1, and, accordingly, the defendant's motion based on this argument should be dismissed as a matter of law.

To the extent the defendant is arguing that the Government's *enforcement* of 18 U.S.C. § 248 burdens the defendant's free exercise of his religion, his argument still fails. The defendant's argument is almost identical to that squarely addressed and rejected by the Eleventh Circuit in *Cheffer*. In *Cheffer*, the appellants asserted that abortion violated their sincerely held religious beliefs and that they exercised those beliefs by engaging in sidewalk counseling and oral protest; they did not (and could not), however, assert that "the exercise of their religion require[d] them to use physical force or threats of physical force to prevent abortions." 55 F.3d at 1522. Thus, the court found that § 248 did not burden their religious practice. Here, the defendant argues that § 248 prevents him from undertaking religiously motivated activities, such as "sidewalk counseling" near abortion clinics. It does not. The defendant may engage in peaceful counseling near a clinic under the Act. As explained above, § 248 does not forbid peaceful, non-obstructive expression. The defendant does not assert that using force, threats of force, or engaging in physical obstruction are part of his deeply held religious beliefs. Because § 248 prohibits only conduct that does *not* form a part of the defendant's religion, it places no burden whatsoever (much less a substantial burden) on his free exercise of religion.

Lastly, even if § 248 burdened the defendant's religious practice, courts have uniformly found that § 248 does not violate RFRA because it furthers a compelling governmental interest by the least restrictive means. *Cheffer*, 55 F.3d at 1523; *American Life League, Inc.*, 47 F.3d at 655 (assuming a "substantial burden" for purposes of RFRA analysis); *United States v. Weslin*, 964 F. Supp. 83, 87 (W.D.N.Y. 1997), *aff'd*, 156 F.3d 292 (2d Cir. 1998); *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996)

(summarily agreeing with other courts that FACE does not violation RFRA); *United States v. Brock*, 863 F. Supp. 851, 866 (E.D. Wis. 1994), *aff'd sub nom. United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996). The Government has a compelling interest in preventing violence and physical obstruction, in preserving physical access to health care, and in protecting the exercise of constitutional rights. *Id.* And § 248 is narrowly tailored to address these specific interests: it prohibits only conduct involving force, threats of force, or obstruction that Congress found specifically to be a grave national problem. *Id.* Accordingly, the defendant's motion to dismiss on this ground must be denied.

## V.    SECTION 248 OF TITLE 18 DOES NOT VIOLATE THE FREE EXERCISE CLAUSE

The defendant also argues that § 248 violates the Free Exercise Clause. (ECF No. 24, at 21-22). His argument fails because § 248 is a law of general applicability.

According to the Free Exercise Clause: "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. Amend. I. Essentially, it prohibits the Government from adopting laws designed to suppress religious beliefs or practice. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 521 (1993). Conversely, neutral, generally applicable laws do not violate the Free Exercise Clause, "even if the law[s] ha[ve] an incidental effect on religious practice." *American Life League, Inc.*, 47 F.3d at 654 (4th Cir. 1995) (citing *Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872, 878–79 (1990)); *c.f. Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) ("A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated.").

Section 248 is a generally applicable law that is neutral toward religion; it does not take religion into account in any way. *Cheffer*, 55 F.3d at 1522; *American Life League, Inc.*, 47 F.3d at

654. Whether a violator acts because of a deeply held religious conviction (as the defendant appears to be alleging) or a secular opinion makes no difference (*see* discussion in § II, above), the same conduct is prohibited under § 248. *Id*. Therefore, § 248 does not violate the First Amendment's Free Exercise Clause and the defendant's motion to dismiss on this ground must be denied.

### VI.   SECTION 248 OF TITLE 18 REMAINS A VALID EXERCISE OF CONGRESS' AUTHORITY UNDER THE COMMERCE CLAUSE

#### a.   The Defendant Cites No Intervening Precedent Undercutting the Holding of *Controlling Third Circuit Authority* Upholding the Validity of 18 U.S.C. § 248.

The defendant next argues that § 248 is unconstitutional as charged against him because it exceeds Congress' authority under the Commerce Clause. (ECF No. 24, at 24-33). This argument is foreclosed by controlling Third Circuit precedent.

Congress' commerce power broadly extends to activities that "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce." *United States v. Lopez*, 115 S. Ct. 1624, 1631 (1995). In other words, Congress' authority under the Commerce Clause encompasses the regulation of commercial activity and, conversely, of obstructive conduct that substantially affects interstate commerce. *See Gregg*, 226 F.3d at 262; *Cheffer*, 55 F.3d at 1520. The Supreme Court has also held that Congress may proscribe conduct without a jurisdictional element, where it has rationally concluded that the *class of activities* substantially affected interstate commerce. *Perez v. United States*, 402 U.S. 146, 154 (1971); *Soderna*, 82 F.3d at 1373 (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 332 (1991)) ("[T]he test [is] not the effect of the particular conduct alleged, but that effect cumulated over all the conduct subject to the statute.").

As every court of appeals to address the issue, including the Third Circuit, has held, Congress' extensive findings provide a rational basis for concluding the conduct prohibited by 18 U.S.C. § 248 substantially affects interstate commerce. *Gregg*, 226 F.3d at 264–66; *Norton*, 298 F.3d at 556; *Weslin*, 156 F.3d at 296; *Bird*, 124 F.3d at 678-684; *Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir. 1997); *Soderna*, 82 F.3d at 1373-74; *Dinwiddie*, 76 F.3d at 919; *Terry*, 101 F.3d at 1418; *United States v. Wilson*, 73 F.3d 675, 680 (7th Cir. 1995); *Cheffer*, 55 F.3d 1517; *American Life League, Inc.*, 47 F.3d at 647. The defendant's allegation that these findings would justify expansion of the commerce power to activities unconnected with interstate commerce is incorrect based on the myriad findings by Congress (beyond the mere existence of an "interstate market") discussed in these cases. Additionally, the defendant has not cited a single new case in his motion that undercuts these previous holdings. And indeed, all of the aforementioned cases, except *Soderna* and *American Life League, Inc.*, explicitly discussed and found that § 248 remained a valid exercise of Congress' Commerce Clause authority in light of the (then recent) ruling in *Lopez*. Section 248 is a valid exercise of Congress' authority to enact legislation under the Commerce Clause and, as such, does not infringe upon the Tenth Amendment. *See American Life League, Inc.*, 47 F.3d 642, 647–48 (4th Cir. 1995) (expressly rejecting that argument "that any public safety problems at reproductive health facilities should be handled under existing state laws" because "Congress, not the courts, determines the need for new federal laws"). Therefore, the defendant's motion to dismiss, as far as it is in direct conflict with controlling Third Circuit precedent, must be denied.

> **b.  The Ruling in *Dobbs v. Jackson Women's Health Org.* Does Not Affect the Validity of 18 U.S.C. § 248.**

Lastly, the defendant argues that § 248 is no longer constitutional because *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545 (June 24, 2022) eliminated the federal

constitutional right to an abortion. (ECF No. 24, at 33). This argument is unpersuasive because 18 U.S.C. § 248 is not premised on the right to an abortion.

Courts have historically upheld § 248 as an appropriate exercise of Congress' power to legislate under the *Commerce Clause*. In fact, as noted above, every court to have examined § 248's constitutionality has found it to be valid and all have cited the Commerce Clause as the source of its validity. No court has determined that, in enacting § 248, Congress was enforcing the previously-recognized right to abortion. (*See* §VI (a), *supra*); *Norton*, 298 F.3d at 556 (collecting cases); *United States v. Dillard*, 184 F. Supp. 3d 999, 1001 (D. Kan. 2016) (collecting cases). *Dobbs* nowhere addresses or discusses Congress' authority to enact legislation pursuant to the Commerce Clause. Thus, the fact that *Roe v. Wade*, 410 U.S. 113 (1973) has been overturned in no way affects the continued validity of § 248.

## Conclusion

For the foregoing reasons, the Government requests that this Court deny the defendant's motion to dismiss.

> Respectfully submitted,
>
> JACQUELINE C. ROMERO
> UNITED STATES ATTORNEY
>
> KRISTEN CLARKE
> ASSISTANT ATTORNEY GENERAL
> CIVIL RIGHTS DIVISION
>
> */s/ Sanjay H. Patel*
> SANJAY H. PATEL
> Trial Attorney
> Criminal Section
> Civil Rights Division
> 4 Constitution Square
> 150 M St. NE, 7.121
> Washington, D.C. 20530

Email: Sanjay.Patel@usdoj.gov

ANITA EVE
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
Email: AEve@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the defendant.

*/s/ Sanjay H. Patel*
Sanjay H. Patel

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-323 (GJP)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK HOUCK,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

     **AND NOW**, this _____ day of _____202__, after reviewing the

submissions by the Government and defense counsel, and a hearing on this matter;

     It is hereby **ORDERED** that the defendant's motion to dismiss is **DENIED**.

     **BY THE COURT:**

 

 

_____
**THE HONORABLE GERALD J. PAPPERT**
United States District Court Judge