# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| MARK HOUCK | : | NO. 2:22-cr-00323-GJP |

## DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S CONSOLIDATED MOTION *IN LIMINE*

Except as specifically noted below, Defendant Mark Houck hereby opposes the Government's Consolidated Motion *in Limine* filed December 5, 2022.

### FACTUAL ALLEGATIONS

The Indictment alleges two violations of FACE occurring on October 13, 2021. (*See* D.E. #1: Indictment.) Neither incident has any connection to the provision of "reproductive health services" by Bruce Love, an alleged "volunteer patient escort" at the Philadelphia Planned Parenthood abortion facility at 1144 Locust Street.

In the incident alleged as Count One of the Indictment, two women had left the abortion facility and proceeded west on Locust Street. They encountered Mr. Houck at the corner of 12th Street, about 50 feet away from the entrance to the abortion facility, and began a conversation. The three proceeded across 12th Street, toward a nearby pregnancy resource center, roughly 100 feet away from the abortion facility entrance. Mr. Love saw the three conversing and left his post at the abortion facility entrance to "intercept" them. (Interview Notes from Interview of Anthony Farnan[1], 3/21/22, USAO0000118.) Near the pregnancy center, Mr. Love overtook the three and positioned himself to obstruct Mr. Houck from proceeding, with Mr. Love alleging that Mr. Houck

---

[1] Despite being interviewed twice by the Government and being an eyewitness to the incidents alleged in Counts One and Two, Mr. Farnan was not presented to the Grand Jury.

"told Love to get out of the way." (Interview Notes from Interview of Bruce Love, 3/21/22, USAO0000109.) The two made contact, with Mr. Love falling to the ground. The contact is described by the indictment as a "shove," though Mr. Love himself described the altercation as Mr. Houck "grabbing his arm" and another witness described it as a "hip check."

The indictment omits the key fact of where this interaction occurred: in front of the pregnancy resource center that Mr. Houck counsels toward, and not the abortion facility where patients may have an alleged need to be "escorted" by Mr. Love. (*See id.* at Count One ¶ 5.)

In the incident alleged in Count Two of the indictment, Mr. Houck and his then-12-year-old son were standing at the corner of 12th Street, 50 feet away from the abortion facility entrance and well away from Mr. Love. One witness alleges that Mr. Houck "did not want to be near [Mr. Love] because Love may try and provoke him." (Farnan, 3/21/22, USAO0000118.) Mr. Love left his post at the abortion facility entrance and walked over to the pair. According to Mr. Love, he "normally does not walk to that corner but because Houck was there that day Love did." (Interview Notes from Interview of Bruce Love, 1/5/22, USAO0000080.) There were no facility patrons in the area. According to Mr. Love, Mr. Houck told him to "Stay away from me and stay away from my son." (Love, 3/21/22, USAO0000109.) An altercation ensued and Mr. Houck is alleged to have shoved Mr. Love to the ground.

The government fails to allege that the incident occurred while Mr. Love was providing "reproductive health services," alleging instead only that the incident occurred "in front of" the Planned Parenthood abortion facility, and without noting the incident was away from the entrance to the facility. (*Id.* at Count Two ¶ 2.)

After the incidents, Mr. Love brought a private criminal complaint[2] against Mr. Houck with the Philadelphia District Attorney's Office. In Philadelphia, once a private criminal complaint is made the parties are asked to agree to mediation. Mr. Love refused mediation and thereafter the case was transferred to the Philadelphia Municipal Court for a trial on criminal charges. Ultimately, the charges were dismissed when Mr. Love repeatedly failed to appear for trial.

Then, on April 27, 2022, Assistant United States Attorney Anita Eve sent a target letter to Mr. Houck. Mr. Houck's counsel, former longtime federal prosecutor Matt Heffron, Esq., called and left messages with AUSA Eve. When he received no response, Mr. Heffron sent an email to AUSA Eve, in which he agreed to accept a summons on Mr. Houck's behalf and to self-surrender him in the event of indictment. He did so in order to avoid armed police officers having to come to Mr. Houck's residence, where he lives with his wife and 7 young children. Despite this good faith request, on September 23, 2022, dozens of heavily armed state police and federal agents descended on Mr. Houck's home and took him into custody. Mr. Houck's wife and children were traumatized by this unnecessary show of force.

## ARGUMENT

### I. EVIDENCE OF THE STATE'S INVESTIGATION AND THE STATE COURT'S DISMISSAL OF THE CHARGES MUST BE ADMITTED.

The Government wrongly asks this Court to exclude from trial all evidence of the State Court prosecution and the dismissal of charges with prejudice. Contrary to the Government's unsubstantiated assertions these decisions are relevant and not overly prejudicial.

The Government correctly notes that the Philadelphia Police Department did not initially charge Mr. Houck. The Government, however, persists in falsely representing to this Court that

---

[2] Mr. Love omitted any mention of the incident alleged in Count One in his private criminal complaint.

3

the Philadelphia District Attorney's Office dismissed the charges against Mr. Houck. In point of fact, the state court criminal case was set for trial several times, and the purported victim (Mr. Love) repeatedly declined to appear—it was *the State Court* that eventually dismissed the charges with prejudice. Far from the District Attorney's Office dismissing the charges, as claimed by the Government in its motion, the District Attorney's Office *opposed the dismissal* at the "must be tried" final setting and asked for yet another continuance, which was denied.

Setting aside the Government's inability to accurately represent the relevant facts to this Court, the proceedings in state court are highly relevant to several issues, including Mr. Love's credibility. First, Mr. Love's private criminal complaint recounted only one of the two incidents alleged here.[3] This prior statement of a witness is thus clearly available as a basis to impeach Mr. Love's credibility. *See* Fed. R. Evid. 613 (impeachment by prior inconsistent statement). Mr. Love also failed to appear in state court when he could have done so. This failure to appear eviscerates the credibility of Mr. Love's and the Government's contention that he was twice "shoved," much less actually injured, by Mr. Houck in this case—his injury is a key element to the charged offenses in the indictment. *See* 18 U.S.C. § 248(b)(2) (enhanced penalty if "bodily injury results"). The jury is entitled to know why, after having sworn out and pursued a private criminal complaint, Mr. Love failed to appear in court and stand behind his allegations. In particular, the Government alleges, Mot. at 2, that it began its investigation of Mr. Houck in October 2021 and continued it during the pendency of the state criminal prosecution, even empaneling a Grand Jury in March 2022, as those State charges were still being pressed. This raises additional questions about Mr. Love's conduct: did he skip Court hearings entirely on his own volition or was he flouting the

---

[3] Love also did not file a private criminal complaint after the Government's alleged uncharged May 26, 2021 FACE violation. *See* Gov't's 404(b) Mot. at 4 & 10.

4

State Court and its proceedings (and abusively using the state criminal process against Mr. Houck) on the instructions or advice of federal prosecutors?[4]

Additionally, on one of those days that Mr. Love was to appear in state court as a witness, he instead went to another abortion facility in Philadelphia to "escort." Mr. Houck happened to go to that same facility, after attending Court. Upon seeing Houck, Love mocked him, asking whether he "enjoyed" his morning in Court. This conduct speaks to the motives, bias, and truthfulness of Mr. Love as a witness, *see* Fed. R. Evid. 608, including his desire to use judicial proceedings not as means to vindicate actual wrongs and uphold the law but instead as tools to vexatiously to harass Mr. Houck and others against whom he holds animus. The conduct further supports the Defense's contention that any alleged contact here is, at worst, the sort of "mutual argument" that the Court in *Allentown Women's Center, Inc. v. Sulpizio* ruled is *not* covered by FACE. 403 F. Supp. 3d 461, 467-68 (E.D. Pa. 2019).[5]

Therefore, the entire course of proceedings involving state law enforcement and the state courts must be admitted because of Mr. Love's own conduct in starting and resolving them. Any potential prejudice can easily be cured by a limiting instruction from this Court restricting the jury's use of the evidence to proper purposes, *see* Fed. R. Evid. 105.

---

[4] It is also unknown whether the DOJ considered the impact of the Petite Policy on its investigation, in view of the pending state prosecution. DOJ Manual § 9-2.031 (Petite Policy).

[5] The same analysis applies to the alleged incident from May 26, 2021, which the Government claims involved the provision of abortion services, *see* Gov't's 404(b) Mot. at 4. However, in the actual facts alleged, the Government describes a dispute involving recovery of property by Mr. Houck, not a FACE violation. *Id.* at 10; *see Sulpizio, supra*.

**II. THE GOVERNMENT FAILS TO MEANINGFULLY IDENTIFY THE STATEMENTS IT SEEKS TO EXCLUDE, AND THEREFORE THE MOTION SHOULD BE DENIED WITHOUT PREJUDICE TO BEING ADDRESSED AT TRIAL.**

The Government presumes that Mr. Houck intends to offer certain "out of court statements" (*i.e.*, hearsay) and accordingly seeks to exclude them. The Government does not, however, reasonably identify what those statements are so that Mr. Houck can properly respond.

The Government's request is particularly premature and ill-defined because there are numerous reasons a hearsay statement (even the hearsay statement of a criminal defendant) might be admissible, especially in the context of an alleged physical altercation prompted by Mr. Love's accosting of Mr. Houck's minor son. *See, e.g.,* Fed. R. Evid. 803(1) (present sense impression), 803(2) (excited utterance), & 803(3) (then-existing mental, emotional, or physical condition). The Government says it "may introduce into evidence statements that Defendant Houck made at the time of the charged offenses[] and will not offer those statements in a misleading way such that the introduction of other statements made by Houck would be warranted." Such self-serving assurances by the prosecution ring hollow, especially since the Government cannot identify in its motion what statements *it intends to introduce*.

As a result, the Government asks for an order anticipatorily precluding a criminal defendant from offering statements (statements the Government will not meaningfully describe) in response to other statements the Government *may* use but will also not identify. Any ruling about the admissibility of any of Mr. Houck's statements should simply be made at trial when their context, and thus admissibility, can be judged based on actual evidence rather than Government vagaries.

**III. MR. HOUCK'S CHARACTER EVIDENCE.**

Mr. Houck does not intend at this time to introduce evidence simply to prove his general good character through specific instances of his conduct, though he does reserve the right to

introduce evidence of his character for being law abiding, which the Government concedes is admissible. Beyond that point of agreement, though, the Government's request, sweeps far too broadly, asking the Court to exclude evidence of Mr. Houck's "charitable work, affiliations with religious organizations, admirable family life, [and] his general good standing in the community."

Regarding religious activity and affiliations, Mr. Houck's own motion *in limine* sought to exclude: (1) evidence of Mr. Houck's religious beliefs beyond the mere fact that he is Catholic; (2) evidence that Mr. Houck attended Catholic University in Washington, D.C.; (3) evidence that Mr. Houck is pro-life and adheres to the teachings of the Catholic Church regarding the sanctity of life, including his statements on these issues; (4) evidence regarding Mr. Houck's adherence to the teachings of the Catholic Church regarding issues of sexual morality, including on issues of pornography; and (5) evidence regarding Mr. Houck's leadership of a men's ministry beyond the fact of his leading a men's ministry. It seems then the Government agrees with this request and thus that the evidence in this regard should be limited to the fact that Mr. Houck prays and engages in counseling outside of the Planned Parenthood Clinic because of his Catholic religious beliefs and that he leads a men's ministry.

The Government sweeps too far when it attempts to prohibit *all* evidence of his good family life. One of the two charges specifically concerns the response to the verbal assault engaged in by Mr. Love against Mr. Houck's minor son. Evidence of Mr. Houck's good familial relationship with his son is relevant to explaining Mr. Houck's motives and his intent in defending his son, which are clearly questions at issue in a FACE prosecution. *See Allentown Women's Ctr., Inc. v. Sulpizio*, 403 F. Supp. 3d 461, 467-68 (E.D. Pa. 2019); *see also Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004).

## CONCLUSION

WHEREFORE, except as to those areas where agreement has been noted above, Mr. Houck respectfully asks that the Government's motion *in limine* be denied.

**Respectfully submitted,**

s/BRIAN J. MCMONAGLE
BRIAN J. MCMONAGLE, ESQUIRE

s/PETER BREEN
PETER BREEN, ESQUIRE
*Pro hac vice*

## CERTIFICATE OF SERVICE

BRIAN J. MCMONAGLE, Esquire hereby certifies that a true and correct copy of the foregoing document has been electronically filed.

                                         **s/ BRIAN J. MCMONAGLE**
                                         **BRIAN J. MCMONAGLE, Esquire**

**DATED: 12-16-22**