## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | |
| | : | |
| **MARK HOUCK** | : | **NO. 2:22-cr-00323-GJP** |

## ORDER

And now, this _____ day of _____, 2023, after reviewing the motion of Defendant Mark Houck for leave to file a reply in support of his pending motion to dismiss and based on the entire record in the cause;

**IT IS HEREBY ORDERED** that the motion for leave to file the reply attached to the motion for leave to file is **GRANTED**, and said reply is deemed filed and accepted by the Court for consideration as of this date.

BY THE COURT:

_____
**THE HONORABLE GERALD J. PAPPERT**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | |
| MARK HOUCK | : | NO. 2:22-cr-00323-GJP |

## DEFENDANT'S MOTION FOR LEAVE
## TO FILE REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Mark Houck hereby moves the Court for leave to file the attached reply in support of his motion to dismiss filed December 5, 2022 (Dkt. #24).

Mr. Houck respectfully urges that his brief reply is necessary to address new arguments and issues raised by the Government in its response to the motion to dismiss.

WHEREFORE, defendant Mark Houck respectfully asks that the Court grant leave for him to file the attached reply.

Respectfully submitted,

s/BRIAN J. MCMONAGLE
BRIAN J. MCMONAGLE, ESQUIRE

s/PETER BREEN
PETER BREEN, ESQUIRE
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

BRIAN J. MCMONAGLE, Esquire hereby certifies that a true and correct copy of the foregoing document has been electronically filed.

**s/ BRIAN J. MCMONAGLE**
**BRIAN J. MCMONAGLE, Esquire**

**DATED: 1-4-23**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | |
| **MARK HOUCK** | : | **NO. 2:22-cr-00323-GJP** |

## DEFENDANT'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

Defendant Mark Houck hereby files this reply in support of his motion to dismiss filed
December 5, 2022 (D.E. #24).

**I. DEFENDANT HAS MADE A SUFFICIENT SHOWING TO MERIT DISMISSAL OR, ALTERNATIVELY, DISCOVERY AND AN EVIDENTIARY HEARING ON THE ISSUES OF SELECTIVE ENFORCEMENT AND SELECTIVE PROSECUTION.**

### A. The Government Has Not Rebutted Mr. Houck's Evidence of Selective Enforcement and Selective Prosecution.

Mr. Houck's motion presents copious evidence to support his contentions of selective
enforcement and selective prosecution by the federal government.  The motion details how the
current U.S. Department of Justice has prosecuted pro-life advocates under FACE, while not
initiating prosecutions under FACE of any individuals for the many recent acts of violence made
against pro-life advocates and institutions.  (*See* Def.'s Mem. in Supp. of Mot. to Dismiss at ECF
pp 9-16.) *The Government does not dispute the facts cited in Mr. Houck's motion.*  It attempts to
make the picture look less lopsided against pro-life individuals by citing instances where a mere
four investigations have been announced by the DOJ, but this is not an apples-to-apples
comparison since these are not actual prosecutions.  (*See* Gov't Resp. to Mot. to Dismiss at ECF

pp 10.)[1] The Government's brief is bereft of examples of prosecutions of anyone who has committed violence against pro-life advocates or pregnancy centers.

Further, the Government argues—illogically—that violations of 18 U.S.C. 248(a)(3) (prohibiting damage or destruction to reproductive health care facilities) are not similarly situated to violations of 18 U.S.C. 248(a)(1) (the provision Mr. Houck is charged with violating), *but it offers no supporting authority for this proposition whatsoever*. Indeed, "[p]ersons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). And, as the Government's own authority admits, the "relevant aspect" in selective prosecution cases is whether the comparator class "violat[ed] a statute" with similar or greater "frequen[cy] than" the persecuted group and defendant. *Terry v. Reno*, 101 F.3d 1412, 1420 (D.C. Cir. 1996). But Mr. Houck has cited more than 150 unrebutted incidents of ostensible *violations of the FACE Act* in the form of pro-choice damage and destruction (including *firebombing*) inflicted on pro-life pregnancy help centers, now dating back more than seven months, without any resulting prosecutions, or even arrests.

Thus, the Government's citation to *United States v. Hedaithy* is wholly inapposite, as there the defendant lacked any evidence that the alleged comparable class *violated the statute at all*. 392 F.3d 580, 608 (3d Cir. 2004).

Further, the damage and destruction inflicted on pregnancy help centers over the better part of the last year have often *actually interfered with or entirely suspended* the provision of pro-life

---

[1] *See, e.g.*, Virginia Allen, "Will Jane's Revenge Face Criminal Charges for Attacks on Pro-Life Centers? Waiting on FBI," The Daily Signal, December 13, 2022 (noting flippant response by FBI investigator upon receiving message from local police that "Jane's Revenge" had claimed responsibility for damaging yet another pregnancy center, *i.e.*, stating: "National conspiracy—check!")

reproductive health services to women in need—contravening the *same interests* protected by §

248(a)(1).[2] *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43

(1993) ("[I]nequality results when [government] decides that the governmental interests it seeks

to advance are worthy of being pursued only against conduct with a [disfavored] motivation.").

Accordingly, the Government's "similarly situated" arguments are patently erroneous, and its

failure to prosecute widespread violations of § 248(a)(3) plainly trigger the selective enforcement

and prosecution doctrines.Mr. Houck's evidence is not limited to national examples of similarly

situated individuals.   Despite the Government incorrectly claiming that Mr. Houck has not

identified any instances where a similarly situated pro-choice individual was not investigated or

prosecuted, he has in fact done so.  The DOJ has in this very case elected to prosecute Mr. Houck

under FACE, even though it has clear evidence that, by its logic, Mr. Love engaged in a violation

of FACE on October 13, 2021, when he attempted to interfere with Mr. Houck's pro-life sidewalk

counseling.  Mr. Love is "similarly situated" and yet unprosecuted by the Government.

Such evidence establishes a prima facie case that the Government has "intentionally and

purposefully discriminated against the defendant by failing to prosecute other similarly situated

persons."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal citations omitted).

"After [a] defendant has put forward a prima facie case [of selective prosecution], the burden shifts

to the government to prove the legitimacy of the prosecution . . . [with] compelling evidence that

---

[2] Stephen Watson, "Fire at anti-abortion center in Amherst investigated as arson," The Buffalo
News, June 7, 2022 (documenting "broken windows and extensive fire damage within" the pro-
life pregnancy center), https://buffalonews.com/news/local/fire-at-anti-abortion-center-in-
amherst-investigated-as-arson/article_9da26e5e-e669-11ec-babe-cbbbcb6659a2.html; Caroline
Downey, "Pro-Abortion Terrorists Firebomb Oregon Pregnancy Center," National Review, June
13, 2022 (documenting total destruction of at least one room inside the facility),
https://www.nationalreview.com/news/pro-abortion-terrorists-firebomb-oregon-pregnancy-
center/.

its charging decision was valid." *Rogers v. Gov't of the Virgin Islands*, 63 V.I. 1010, 1020-21, 2015 U.S. Dist. LEXIS 115343 (D.V.I. Aug. 21, 2015) (internal citations and quotation marks omitted). "Such evidence can include lack of knowledge regarding the claimed basis for selection, efficient use of limited resources, randomness of selection, enforcement laxity, and other legitimate law enforcement considerations." *Id.* at 2021.

Mr. Houck has also cited statements from DOJ officials indicating hostility and animus toward those with pro-life views. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss at ECF p 9.) Additionally, Mr. Houck has detailed the irregularities in the case, including 1) the federal government's prosecuting after a dismissal on the merits in state court; 2) the failure to present exculpatory evidence to the federal Grand Jury; and 3) the outrageous multi-agent FBI raid on Mr. Houck's home when he had already offered to self-surrender.

Nevertheless, the Government's response to Mr. Houck's motion to dismiss does not come forward with evidence to rebut the presumption that arises from Mr. Houck's evidence. Therefore, the dismissal under Fed. R. Crim. P. 12(b)(3)(A)(iv) is warranted.

### B. The Standard to Merit Discovery and a Hearing on the Issues of Selective Enforcement and Selective Prosecution Has Been Met.

At a minimum, Mr. Houck's evidence has met the standard for triggering discovery and an evidentiary hearing on the issues of selective enforcement and selective prosecution. *See United States v. Torquato*, 602 F.2d 564, 569-70 (3d Cir. 1979) (requiring defendant to come forward with evidence of a "colorable claim" of selective prosecution). To obtain discovery on a selective prosecution claim, a defendant need only provide "some evidence" that is "credible" to support the claim. *See, e.g., United States v. Washington*, 869 F.3d 193, 214-15 (3d Cir. 2017).

The standard for obtaining discovery and a hearing for a selective enforcement claim is more relaxed than that required for a selective prosecution claim. When the issue is selective

enforcement, "a defendant need not, at the initial stage, provide 'some evidence' of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. However, the proffer must be strong enough to support a reasonable inference of discriminatory intent and non-enforcement." *Id.* at 220-21.

Mr. Houck asserts both here: selective enforcement and selective prosecution. The Government's response, however, does not rebut Mr. Houck's evidence and is especially silent as to why it selected to prosecute Mr. Houck but not Mr. Love and why the prosecution did not present the exculpatory evidence from witness Anthony Farnan to the Grand Jury, when the DOJ's own manual required it to do so. Accordingly, the standard for discovery and an evidentiary hearing are warranted if the Court does not dismiss the Indictment for the Government's failure to rebut Mr. Houck's prima facie case.

### C. The Government Has Engaged in Viewpoint and Content Based Discrimination.

While the Government attempts to argue that it is only prosecuting certain conduct by Mr. Houck, its decision to select Mr. Houck for prosecution is motivated by the content of his speech and the views he expresses. This unconstitutional targeting of Mr. Houck for his protected First Amendment activity requires dismissal under Fed. R. Cim. P. 12(b)(3)(A)(iv).

Courts have held that FACE does not "play favorites" and, as such, those offering pro-life counseling as an alternative to abortion are just as protected by the statute as a facility that provides abortion. *See, e.g., Riely v. Reno*, 8860 F. Supp. 2d 693, 702 (D. Ariz. 1994). But that is not how the DOJ is enforcing FACE. Much the opposite, those like Mr. Houck are prosecuted and forced to face a jury trial and the threat of significant criminal penalties precisely because of their pro-life views. The Government thus decides whom to prosecute by reference to the content of what the

would-be defendant is saying, which renders the law content based and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 165-66 (2015).

Despite the Government's protestations to the contrary, its prosecutions are transparently motivated by the content and viewpoint of what the defendants are saying. Thus, the Indictment deserves to be dismissed as violative of the First Amendment.

## II. THE GOVERNMENT'S PROSECUTION IS SUBJECT TO STRICT SCRUTINY UNDER RFRA AND THE FIRST AMENDMENT, WHICH IT FAILS.

The Government's response fails to apprehend the nature of Mr. Houck's arguments under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.*, and the Free Exercise Clause of the First Amendment.

Contrary to the Government's contentions, Mr. Houck's arguments differ from those made by the pro-life advocates in *Cheffer v. Reno*, 55 F.3d 1517 (11th Cir. 1995). Mr. Houck is not claiming any RFRA-protected right to engage in physical force or violence as part of his religiously-based opposition to abortion. *See* 55 F.3d at 1522-23. Rather, Mr. Houck's position is that the two incidents that give rise to the Indictment only occurred because of Mr. Love's efforts to interfere with his religious activities.

By subjecting Mr. Houck to federal prosecution for offenses that carry more than a decade of imprisonment and $350,000 in fines, the Government is substantially burdening Mr. Houck's free exercise of religion. Under RFRA, this necessarily triggers strict scrutiny of the federal government's action, *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 692 (2014), a test the Government fails. The Government's interest in protecting access to "reproductive health services" is not served where it allows Mr. Love's interference with Mr. Houck's provision of pro-life reproductive health services unprotected. Similarly, a federal criminal prosecution is not the least restrictive means of achieving that interest, given the availability of more-than-adequate state

criminal remedies, along with federal civil remedies under FACE.  Therefore, the prosecution is inconsistent with RFRA.

As detailed above, the Government's approach to enforcement of FACE grants *de facto* exemptions to actions that violate the act so long as made against religious pro-life advocates.  This is seen not only in the DOJ's pattern of enforcement, but also in the precise enforcement of FACE against Mr. Houck's religious pro-life counseling, but not against Mr. Love's secular pro-choice advocacy on October 13. This lack of general applicability triggers strict scrutiny under the Free Exercise Clause, which—as with RFRA—the Government cannot satisfy.  *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021).

Therefore, the indictment should be dismissed under RFRA and the First Amendment.

### III. THE INDICTMENT FAILS TO ALLEGE ANY FACTS RELATED TO THE SPECIFIC INTENT REQUIRED FOR CONVICTION, ILLUSTRATING THE GOVERNMENT'S BAD FAITH.

The Government defends its Indictment by arguing that an indictment typically need not allege all of the evidence it will use to prove scienter at trial, *see United States v. Cochran*, 17 F.3d 56, 57 (3d Cir. 1994), but the Indictment in this case falls to allege *any* such evidence.  Thus, while an indictment may need "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution," *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989), that task cannot be accomplished here because Mr. Houck is wholly unaware of what facts could possibly support a finding that he acted with the intent required for a conviction on the charged offenses.  The resulting prejudice to Mr. Houck is too pronounced to permit prosecution.

Notably, the Government does not specify how Mr. Houck's motion misstates or omits any facts. Instead, the Government asserts with a broad brush that the facts stated in the motion are wrong, even though Mr. Houck's representations are based on the FBI's own 302s, including the exculpatory statements from Mr. Farnan whom the Government failed to present to the Grand Jury, in contravention of the DOJs own regulations, *see* DOJ Manual 9-11.233.

The Government's inability to articulate the specific facts for how it will convict on the charged offenses' scienter requirement, either in the Indictment or its response, further underscores the bad faith that has plagued this case from the FBI raid on Mr. Houck's home (notwithstanding his offer to self-surrender) to the lack of charges against Bruce Love for physically interfering with the counseling being undertaken by Mr. Houck on October 13, 2021, deciding instead to charge Mr. Houck for with a FACE offense for these events. As such, the paucity of the Government's indictment only serves to highlight its selective enforcement and prosecution, and viewpoint, content, and religious discrimination.

If the Court does not dismiss the Indictment for a lack of particular factual allegations to support the required specific intent, Mr. Houck respectfully asks for an appropriate jury instruction consistent with *Allentown Women's Center, Inc. v. Sulpizio*, 403 F. Supp. 3d 461 (E.D. Pa. 2019), to protect the scienter element required for conviction.

## IV. THE INDICTMENT SHOULD BE DISMISSED BECAUSE APPLICATION OF FACE TO MR. HOUCK VIOLATES THE COMMERCE CLAUSE.

In response to Mr. Houck's motion to dismiss based on the Commerce Clause, it is no answer to simply say, as the Government does, that the Third Circuit upheld the constitutionality of FACE in *United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000). This is because *Gregg* concerned the facial validity of the act. The present motion made under Fed. R. Crim. P. 12(b)(2) is based on a lack of jurisdiction and challenges the unconstitutionality of FACE both facially and as

8

applied to Mr. Houck.  The actions specifically considered in *Gregg* concerned protestors banding together in blockades of abortion clinics to prevent them being accessed by clinic patients and employees, not isolated acts against uncompensated clinic *volunteers*, as alleged here.  *See* 226 F.3d at 256, 259, 264-65.

While it may be the case that an indictment need not allege that the particular acts purportedly committed by Mr. Houck in this specific case had an effect on interstate commerce (since a nexus to interstate commerce is not an element of a FACE violation, *cf., e.g.,* 18 U.S.C. § 922(g)(1)), this does not mean that the Government is relieved of at least establishing, over a constitutional defense, that Mr. Houck's actions are part of a class of economic activities that have an effect on interstate commerce.  This is the teaching of post-*Gregg* decisions from the U.S. Supreme Court and the Third Circuit.  *See, e.g., Gonzalez v. Raich*, 545 U.S. 1 (2005); *United States v. Kukafka*, 478 F.3d 531, 535 (3d Cir. 2007); *United States v. Whited*, 311 F.3d 259, 266 (3d Cir. 2002) ("[T]he *Morrison* Court made clear that the Commerce Clause does not authorize Congress to 'regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.'") (quoting *United States v. Morrison*, 529 U.S. 598, 617 (2000)).  The Government's response, like the Indictment, however, fails to identify any class of economic activities to which Mr. Houck's alleged conduct belongs and which is thus subject to regulation under the Commerce Clause.

In part of its response, the Government appears to rely on the idea of "obstructive conduct" as the class of activities being regulated by FACE, but this is far too general and vague a concept to pass constitutional muster, especially since "obstruction" lacks an inherently economic character, *see Whited*, 311 F.3d at 266.  Furthermore, Mr. Houck is not charged with obstructing access to the abortion clinic, but rather with assaulting someone who is neither a clinic patient nor

employee.[3] Thus, Mr. Houck's alleged actions are not even within the class of activities cited by the Government.

Ultimately, the Government's Indictment and response allege only two instances of purely intrastate non-economic assaultive (not obstructive) conduct. Interpreting FACE to cover this type of conduct results in "an improbably broad reach" of federal criminal jurisdiction to reach matters that are "purely local crimes." *Bond v. United States*, 572 U.S. 844, 859-60 (2014). Such a construction is to be avoided, which why it is proper for courts to "insist on a clear indication that Congress meant to reach purely local crimes, before interpreting [a] statute's expansive language in a way that intrudes on the police power of the States." *Id.* at 860 (citation omitted); *see also Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 173-74 (2001) (holding that, under the Commerce Clause, permitting government to apply the Clean Water Act to a "municipal landfill" "would result in a significant impingement of the States' traditional and primary power over land and water," and concluding that, "We read the statute as written to avoid the significant constitutional and federalism questions raised by respondents' interpretation"). Deference to state authorities is particularly warranted in this case since Pennsylvania's court already dismissed the charges filed against Mr. Houck (over the state prosecutor's objection) when Mr. Love failed to appear at trial—a fact the Government nowhere contests in its response.

---

[3] And Mr. Love is not even alleged to be "escorting" in Count Two. As to Count One, the alleged "escorting" is 100 feet away from the clinic entrance, in front of an unrelated pregnancy resource center, and allegedly provided to two unnamed and unknown individuals who had long since left the abortion clinic.

Because the conduct allegedly committed by Mr. Houck falls outside of the federal government's powers of regulation under the Commerce Clause, the Indictment against him should be dismissed.

## CONCLUSION

WHEREFORE, defendant Mark Houck respectfully asks that his motion to dismiss be granted.

Respectfully submitted,

**s/BRIAN J. MCMONAGLE**
**BRIAN J. MCMONAGLE, ESQUIRE**

**s/PETER BREEN**
**PETER BREEN, ESQUIRE**
*Admitted pro hac vice*

11

## CERTIFICATE OF SERVICE

BRIAN J. MCMONAGLE, Esquire hereby certifies that a true and correct copy of the foregoing document has been electronically filed.

<u>**s/ BRIAN J. MCMONAGLE**</u>
**BRIAN J. MCMONAGLE, Esquire**

**DATED: 1-4-23**