IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   v.<br><br>MARK HOUCK,<br><br>                *Defendant.* | CIVIL ACTION<br>NO. 22-cr-323 |

**PAPPERT, J.**                                                                                                        January 10, 2023

**MEMORANDUM**

Mark Houck is charged with two counts of violating the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248(a)(1), for allegedly assaulting a volunteer patient escort outside the Elizabeth Blackwell Health Center, a Planned Parenthood facility in Philadelphia. (ECF 1.) Trial begins January 24, and Houck moves to dismiss both counts in the indictment, asserting a number of disparate challenges to the Government's case. (ECF 24.) After considering the Motion (ECF 24), the Government's Response (ECF 27), and Houck's Reply (ECF 37), the Court denies the Motion.

I

Federal Rule of Criminal Procedure 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). The scope of a district court's review at the Rule 12 stage, however, is limited. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). A pretrial motion to dismiss an indictment is not the appropriate vehicle for addressing the sufficiency of the government's evidence. *Id.* (quoting *United States v.*

1

*DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000)). "The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. There is no criminal corollary to the civil summary judgment mechanism." *Id.* (quoting *DeLaurentis*, 230 F.3d at 661). In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment. *Id.* (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)). Evidentiary issues—such as credibility determinations and the weighing of proof—are not determined at this stage. *Id.* (quoting *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011)). Therefore, the Court's "review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." *Id.* at 595–96 (citations omitted).

II

Houck first contends dismissal is warranted because the charges constitute selective enforcement and selective prosecution.[1] In his Reply, he alternatively argues for discovery and an evidentiary hearing on the issue. *See* (Def.'s Reply Supp. Mot. Dismiss 1, ECF 37). He first points out the Government did not also prosecute Bruce Love—the purported victim in this case—for allegedly similar conduct. *See* (Def.'s Br.

---

[1] The Third Circuit has noted that courts often use the terms "selective prosecution" and "selective enforcement" interchangeably. *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017). However, "'[p]rosecution' refers to the actions of prosecutors (in their capacity as prosecutors) and 'enforcement' to the actions of law enforcement and those affiliated with law-enforcement personnel." *Id.* "*Substantive* claims of selective prosecution and selective enforcement are generally evaluated under the same two-part test." *Id.* (emphasis in original). Houck's Reply (ECF 37) clarifies that he makes a selective enforcement and a selective prosecution claim. The Court analyzes them together under the same test.

Supp. Mot. Dismiss 5, ECF 24).  Second, Houck states he is pro-life and claims the Government has charged him while ignoring violations of the FACE Act by others who have allegedly also violated the statute by damaging or destroying pregnancy resource centers and churches.  *See* (*id.*)

A

When charging a defendant, as "long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Additionally, "'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  The Supreme Court has further explained:

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function.  Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.

*United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations and quotations omitted).

The test "for a selective-prosecution claim draw[s] on ordinary equal protection standards," and "[t]he claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (internal citations and quotation marks omitted). A defendant must provide "clear evidence" of this discriminatory effect and purpose. *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017). To show discriminatory effect, Houck must demonstrate that similarly situated individuals of a different group were not prosecuted. *Armstrong*, 517 U.S. at 457.

Because a defendant will not always have access to the information to meet his or her burden, they may obtain discovery by showing "some evidence" of discriminatory effect and discriminatory intent. *Armstrong,* 517 U.S. at 468–69. A defendant's "failure on one branch dooms the discovery motion as a whole." *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008). The defendant's showing must be "credible" and cannot rely on nationwide statistics. *Washington,* 869 F.3d at 215. Although a lesser showing is required to gain discovery, the same "justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. Failure to meet this "lower threshold" for discovery warrants denial of both the request for dismissal and discovery. *Lewis*, 517 F.3d at 25.

A party's production of "some evidence" when seeking discovery "must still include a showing that similarly situated persons were not prosecuted." *Washington,* 869 F.3d at 214–15. Persons are similarly situated under the Equal Protection Clause

4

when they are "alike in all relevant aspects." *Startzell v. City of Phila.,* 533 F.3d 183, 203 (3d Cir. 2008)).

> [A] similarly situated person is one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000). Houck cannot point to a similarly situated individual who was not investigated or prosecuted.

1

Though he states the "evidence is that Love was the individual engaged in an obstruction in Count One," Houck does not show Love allegedly committed the same crime, in substantially the same manner, and that the evidence against Love was as strong or stronger than the evidence against Houck. He claims that Love "blocked" his path as he attempted to walk two women to a pregnancy center; meanwhile, the Government alleges Houck "shoved" Love. (Def.'s Br. Supp. Mot. Dismiss 5; Indictment, Count One, ¶ 5.) Furthermore, the Government alleges in Count Two (and contends a video will corroborate) that Houck later "forcefully shoved" Love. (Indictment, Count Two ¶ 2.) At this stage, Houck's accusation does not disrupt "the presumption of regularity" and broad discretion afforded to prosecutors. *See United States v. Chem. Found.*, 272 U.S. 1, 14 (1926). His accusation of Love's conduct does not reach the level of "some evidence" of discriminatory effect because he has not shown Love is a similarly situated individual for the purposes of enforcing and prosecuting the

FACE Act, or that the Government abused its prosecutorial discretion when it charged him but not Love.

Houck also believes the Government was obligated to present to the Grand Jury the testimony of eyewitness Anthony Farnan who purportedly corroborated Houck's version of events. (Def.'s Br. Supp. Mot. Dismiss 11; Def.'s Reply Supp. Mot. Dismiss 5.) Farnan's testimony is unnecessary to determine whether Love was a similarly situated individual because Love's conduct—as alleged by Houck—was different than Houck's conduct—as alleged by the Government. Finally, the Government is not required to present exculpatory evidence to the Grand Jury. *United States v. Williams*, 504 U.S. 36, 51 (1992) (holding that "requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."). Houck, of course, can call Farnan as a witness at trial and the jurors can make their own determinations.

2

Houck's contention that the Government failed to prosecute "violence against pro-life pregnancy centers and churches nationwide" is not "some evidence" demonstrating a selective prosecution claim. (Def.'s Br. Supp. Mot. Dismiss 5.) In *Armstrong*, the Supreme Court held that a study, which showed that every defendant who was prosecuted for certain drug crimes was black, did not reach the level of "some evidence tending to show the existence" of a selective-prosecution claim. 517 U.S. at 470 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)). The Court found that "[t]he study failed to identify individuals who were not black and could have

been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." *Id.*

Houck's argument is akin to that deemed insufficient in *Armstrong*. Houck cites "more than 20 other pro-life individuals" who were charged with FACE Act violations in 2022. (Def.'s Br. Supp. Mot. Dismiss 6.) But this is not evidence of similarly situated individuals of a different group who were not prosecuted. References to attacks on Catholic churches and pregnancy resource centers are similarly insufficient: although indicia of potential crimes, they are not evidence that any individual was similarly situated to Houck, violated the FACE Act in the same manner, and then was not investigated or prosecuted. Because Houck's claims fail to show that the Government ignored potential prosecutions of similarly situated offenders of another class, the Court need not address the discriminatory purpose prong. *See Lewis*, 517 F.3d at 29 (holding that where no evidence of discriminatory effect was shown, "further consideration of the evidence pertaining to discriminatory intent would serve no useful purpose.").

### III

Houck next contends the indictment violates the First Amendment because the Government's interpretation and enforcement of the FACE Act constitutes viewpoint discrimination and is content based. (Def.'s Br. Supp. Mot. Dismiss 7–12.) First, the Act itself is viewpoint and content neutral, applying to all reproductive health services and places of religious worship. *See* 18 U.S.C. § 248(a)(1)–(2); *United States v. Gregg*, 226 F.3d 253, 267 (3d Cir. 2000) ("The language of the statute and the legislative history demonstrates that FACE governs all individuals and groups that obstruct the provision of reproductive health services and religious worship," is "view-point neutral,"

and "does not discriminate on the basis of content."); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 651 (4th Cir. 1995) ("[W]e find that the Access Act is content and viewpoint neutral.").

Houck argues that enforcing the Act is viewpoint discrimination, relying on an alleged pattern of FACE Act enforcement against pro-life individuals but none against pro-choice advocates. (Def.'s Br. Supp. Mot. Dismiss 7–9.) But the Act does not regulate Houck's speech; it only prohibits certain conduct. *Gregg*, 226 F.3d at 267 (FACE "governs conduct not speech"). Houck's claim that the Government charged him because of his views but did not charge those with opposing views engaging in similar conduct is a repackaging of his selective prosecution claim and fails for the reasons already stated.

Alternatively, Houck argues that the FACE Act as applied to him is content based because the indictment labels him a "protestor," while Love is referred to as a "reproductive health services" provider. (Def.'s Br. Supp. Mot. Dismiss 12.) But the way the Government describes the facts in an indictment does not make the prosecution content based. Houck also claims the only difference between him and Love is the *content* of their speech, and that the Government's determination that only one of them provides health services "renders the law content-based on its face." (*Id.* at 13.) The Government, however, may describe the events in the indictment as it pleases, and what Houck and Love did or didn't do is for the jury to decide.

8

IV

A

Houck next argues the indictment violates the Religious Freedom Restoration Act. (Def.'s Br. Supp. Mot. Dismiss 14.) RFRA prohibits the Government from substantially burdening a person's exercise of religion, even if the burden results from a rule of general applicability, unless the government can demonstrate that the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1(a)–(b). Houck argues that this prosecution burdens his exercise of religion and that Love interfered with his religious activities. (Def.'s Reply Supp. Mot. Dismiss 6; Def.'s Br. Supp. Mot. Dismiss 16.)

Houck claims the Government's prosecution of this case "must satisfy strict scrutiny." (Def.'s Br. Supp. Mot. Dismiss 16.) The FACE Act prohibits "force," "threat[s] of force," or "physical obstruction." 18 U.S.C. § 248(a). The enforcement of a statute prohibiting this conduct does not burden his exercise of religion, for while Houck contends his "pro-life praying and sidewalk counseling is . . . religiously motivated," he has not argued that the government or the Act has burdened this exercise of his religion. (Def.'s Br. Supp. Mot. Dismiss 15); *see Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995) (holding that because the defendants did "not assert that the exercise of their religion requires them to use physical force or threats of physical force to prevent abortions," the Act did not burden their practice of religion).

The Act, and its enforcement, "does not prohibit protestors from praying, chanting, counseling, carrying signs, distributing handbills or otherwise expressing opposition to abortion, so long as these activities are carried out in a non-violent, non-

9

obstructive manner." *Am. Life League*, 47 F.3d at 648. Instead, "[w]hat the Act does prohibit is force, the threat of force and physical obstruction intended to deprive someone of the lawful right to use or provide reproductive health services." *Id.* Houck does not contend that this prohibition on force, the threat of force and physical obstruction burdens—let alone substantially burdens—his religious exercise so the Court need not address whether the Act is the least restrictive means of furthering a compelling Government interest.

Finally, as a fallback, Houck alleges Love "was plainly interfering" with his religious exercise. (Def.'s Br. Supp. Mot. Dismiss 15; Def.'s Reply Supp. Mot. Dismiss 6.) But RFRA does not apply to private individuals. *See* 42 U.S.C. § 2000bb-1.

B

Houck's claim that the Act as applied to him violates the First Amendment's Free Exercise Clause is incorrect as well. (Def.'s Br. Supp. Mot. Dismiss 7.) "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Phila.,* 141 S. Ct. 1868, 1876 (2021) (discussing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878–882 (1990). The FACE Act does not violate the Free Exercise Clause. *See Am. Life League,* 47 F.3d at 654 ("[T]he Act is a generally applicable law, neutral toward religion. It does not offend the First Amendment's Free Exercise Clause.") Houck has not demonstrated that the Act burdens any religious exercise. Like his viewpoint discrimination argument, Houck claims that the Act as applied to him violates the Free Exercise Clause because he was charged under the Act while other purported violators were not. *See* (Def.'s Reply Supp. Mot. Dismiss 7). This

restating of his selective prosecution claim fails again for the reasons previously explained.

V

Houck contends the Government cannot establish the FACE Act's specific intent requirement. (Def.'s Br. Supp. Mot. Dismiss 18.) His argument is premature. Under Federal Rule of Criminal Procedure 7(c)(1), a criminal indictment or information must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Third Circuit has held:

> An indictment is sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.

*United States v. Pierce*, No. 19-cr-304, 2021 WL 105611, at *1 (M.D. Pa. Jan. 12, 2021) (quoting *Bergrin*, 650 F.3d at 264). The Government is not required to include all of its evidence in the indictment. *Huet*, 665 F.3d at 595.

Houck argues that "no reasonable jury could find that Mr. Houck acted with the requisite specific intent in light of the indisputable evidence." (Def.'s Br. Supp. Mot. Dismiss 18.) At this point there is no "indisputable evidence"—just allegations by the Government and denials by the defendant. If the evidence is as favorable for Houck as he claims, the jury may well find in his favor, and if it doesn't, Houck can move for acquittal. *See* Fed. R. Crim. P. 29.

VI

Finally, Houck claims the Court lacks jurisdiction because the Act itself, and its application to Houck, violates the Commerce Clause. *See* (Def.'s Reply Supp. Mot. Dismiss 8–9). First, the Third Circuit has held that the FACE Act was a valid exercise of Congress's power under the Commerce Clause. *Gregg*, 226 F.3d at 266 ("Our determination that FACE regulates activity that has a substantial effect on interstate commerce is supported by Supreme Court cases young and old.").

Second, the application of the Act to Houck's alleged conduct does not violate the Commerce Clause. Houck argues he "is not charged with obstructing access to the abortion clinic, but rather with assaulting someone who is neither a clinic patient nor an employee." (Def.'s Br. Supp. Mot. Dismiss 9–10.) He claims the indictment "fails to identify any class of economic activities to which Mr. Houck's alleged conduct belongs and which is thus subject to regulation under the Commerce Clause." (Def.'s Reply Supp. Mot. Dismiss 9.) In *Gregg*, the Third Circuit held that "the misconduct regulated by FACE, although not motivated by commercial concerns, has an effect which is, at its essence, economic." 226 F.3d at 262 (citing *United States v. Dinwiddie*, 76 F.3d 913, 921 (8th Cir. 1996) ("FACE prohibits interference with a commercial activity—the provision and receipt of reproductive health services"); *Cheffer*, 55 F.3d at 1520 (holding that "the Access Act does regulate commercial activity, the provision of reproductive health services.")).

With its allegation that Houck, by force, intentionally injured, intimidated and interfered with Love because Love was and had been providing reproductive health services, the Government alleges Houck interfered with the kind of

commercial activity—reproductive health services—to which the Act seeks to ensure access. (Indictment, Count One ¶ 6, ECF 1-2). At this stage and taking the allegations as true, *Huet*, 665 F.3d at 595, the indictment places Houck's alleged conduct within the "class of activities" the Act regulates. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005).

    An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.