IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK HOUCK | CRIMINAL ACTION<br><br>NO. 22-323 |

**PAPPERT, J.** January 11, 2023

### MEMORANDUM

Mark Houck was charged by indictment with two counts of violating the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248(a)(1). On October 13, 2021, Houck allegedly twice assaulted a volunteer patient escort, Bruce Love, outside the Elizabeth Blackwell Health Center, a Planned Parenthood Facility at 1144 Locust Street in Philadelphia. In Count One of the indictment, Houck allegedly shoved Love to the ground as Love attempted to escort two patients from the facility. Count Two alleges Houck then verbally confronted Love, again shoving him to the ground, this time causing bodily injury.

Jury selection begins on January 24 and the Government moves to admit, pursuant to Federal Rule of Evidence 404(b), evidence that Houck previously engaged in similar conduct on the clinic's premises. The Court denies the Motion because the prior incident is not relevant to show two of the Government's proffered purposes and the probative value of its third purpose is substantially outweighed by the danger of unfair prejudice.

1

I

According to the Government, on May 26, 2021, Houck was distributing pro-life literature which some Blackwell Center patients then handed to Love. (Gov't 404(b) Mot. 10, ECF 20.) Houck allegedly "attempted to retrieve the literature and took three to four steps from the sidewalk onto the Clinic's private property." (*Id.*) Love then allegedly "blocked" Houck in the facility's courtyard before Houck "pushed [Love] on the chest." (*Id.*) Houck neither offers an alternative version of events nor concedes the Government's account.

The Government contends that evidence of Houck's conduct in May of 2021 "demonstrates that Houck's targeted use of force against [Love] was motivated over [Love's] role in providing reproductive health services by assisting patients," rendering it probative of (1) his intent and motive to "renew[] his assault on the same victim on October 13, 2021" and (2) his knowledge that Love "was known to be a volunteer patient escort and provider of reproductive health services." (*Id.* at 10–11.) It also contends the evidence will help rebut anticipated defenses, including that Houck was acting in defense of his minor son. (*Id.* at 12.) Moreover, the Government argues this evidence presents little risk of unfair prejudice. (*Id.* at 15.)

Houck counters that it is "unmistakably clear" the evidence is being offered to show he "was acting in conformity with this alleged conduct on the date of the charged incident." (Def. 404(b) Mot. 6–7, ECF 28.) He argues the May incident is inadmissible because it is uncorroborated by video, uncharged and unrelated to the FACE statute. (*Id.* at 6.) Houck also argues the evidence should be barred under Rule 403 because it is unfairly prejudicial and confuses the issues. (*Id.* at 6–7.) He contends the probative

value of this evidence is minimal because the conduct charged by indictment was captured on video and occurred in the presence of others, while the potential for unfair prejudice is high because "a jury could infer that if Mr. Houck assaulted Mr. Love in the past, he must have done so on the date of the charged incident." (*Id*. at 7.)

II

Courts may admit prior bad acts as intrinsic or extrinsic evidence. *See United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Evidence is intrinsic, and not subject to Federal Rule of Evidence 404(b), only if it directly proves the charged offense or if the "uncharged acts [are] performed contemporaneously with the charged crime [and] they facilitate that commission of the charged crime." *Id*. at 248–49.

Courts analyze extrinsic prior act evidence under Rule 404(b), which prohibits evidence of a "crime, wrong, or other act" used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The "permitted uses" of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to 404(b)(1)'s "prohibited uses," and "the party seeking to admit evidence under 404(b)(2) bears the burden of demonstrating its applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014); *see also id*. ("Rule 404(b) is a rule of general exclusion and carries with it no presumption of admissibility") (internal quotations and citation omitted). "Rule 404(b) must be applied with careful precision, and . . . evidence of a defendant's prior bad acts is not to be admitted unless both the proponent and the District Court plainly identify a

3

proper, non-propensity purpose for its admission." *Id.* at 274 (citing *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).

Prior bad act evidence must satisfy a four-part test—established in *Huddleston v. United States*, 485 U.S. 681 (1988)—to be admissible under Rule 404(b). Specifically, the evidence must be:

> (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested.

*Caldwell*, 760 F.3d at 277–78 (citing *Davis*, 726 F.3d at 441).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. For evidence offered pursuant to Rule 404(b) to be relevant, it must fit into an inferential chain "no link of which is a forbidden propensity inference." *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017) (internal quotations and citation omitted). The Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III

Evidence of Houck's May 2021 conduct is not intrinsic evidence of the charged offenses as it cannot directly prove the crime or be fairly viewed as a contemporaneous action that facilitated it. Because this evidence fails the four-part *Huddleston* test, it is also inadmissible extrinsic evidence under Rule 404(b).

The Government wants to present evidence of the May 2021 altercation to show (1) Houck's knowledge that Love was a provider of reproductive health services (as a Blackwell Center patient escort) and (2) Houck's intent and motive to attack Love because he was providing reproductive health services. (Gov't 404(b) Mot. 10–11.)

A

In analyzing the first *Huddleston* prong—whether the evidence is offered for a proper purpose—courts begin by considering the "material issues and facts the government must prove to obtain a conviction." *Caldwell*, 760 F.3d at 278 (citing *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992)). To convict Houck under 18 U.S.C. § 248(a)(1), the government must prove that:

> (1) the defendant used force; (2) the defendant intentionally injured, intimidated and interfered with Love, or attempted to do so; and (3) the defendant did so because Love was a provider of reproductive health services.[1]

*See* (Gov't 404(b) Mot. 6.) (citing 18 U.S.C. § 248(a)(1)).

Houck's knowledge of Love's status as a clinic volunteer is implicitly at issue, given the third element. The statute requires proof that Houck intended to cause injury or otherwise interfere with Love and was motivated to do so because he provided reproductive health services. The Government's proffered purposes for offering the other acts evidence—knowledge, intent and motive—are therefore "proper" under *Huddleston*'s first prong.

---

[1] Under the statute, "reproductive health services" means "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counseling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5).

5

B

To satisfy the second *Huddleston* prong, the Government must articulate "how [the evidence] fits into a chain of inferences" connecting it to the proper purpose, "no link of which is a forbidden propensity inference." *Davis*, 726 F.3d at 442. Even when a non-propensity purpose is "at issue" in a case, "the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." *Caldwell*, 760 F.3d at 281. Thus, the prosecution must explain "exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove." *Id.* at 282 (citing *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012)). For its part, the Court must "analytically consider" whether the proffered evidence tends to establish the proffered purpose. *Id.* at 283.

1

The Government first addresses intent and motive. It argues the May 2021 incident is probative of Houck's "intent and motive in renewing his assault on the same victim on October 13, 2021" because on both occasions Love "was providing reproductive health services and the defendant used force" against him. (Gov't 404(b) Mot. at 10, 14.) Anticipating Houck to argue that his conduct was unrelated to Love's provision of reproductive health services but rather in defense of his minor son, the Government believes the May 2021 incident will show Houck's "targeted use of force" was motivated by Love's "role in providing reproductive health services by assisting patients."[2] (*Id.* at 10, 12.)

---

[2] The Government does not argue the May 2021 incident is probative of the intent required under the second element of the statute, i.e., Houck's general intent to injure or interfere with Love (independent of his reasons for doing so). Because it is the Government's burden to identify a proper other purpose for presenting evidence of a prior bad act, see *Caldwell*, the Court does not address it

6

If the Government merely had to prove who injured Love, the analysis would be straightforward. Houck and Love's May altercation could provide motive for Houck to assault Love again in October. That motive would tend to make it more likely that Houck did in fact assault him in October, and the prior altercation would be relevant under Rule 404(b). Here, however, the final element of § 248(a)(1) adds a wrinkle: the Government must prove Houck assaulted Love *because of* the services he was providing to clinic patients.

Absent a showing of Houck's intent or motive in May, the Government cannot use the prior incident to prove his intent or motive in October. Prior bad act evidence must be relevant "based on what the factfinder knows about the prior act." *Davis*, 726 F.3d at 442. *Davis* offers the following example: "even if the defendant was convicted of intentional manslaughter, the conviction will be relevant to intent only if the jury knows the [prior] act was intentional and not reckless or negligent." *Id*. (illustrating the concept through a hypothetical assault prosecution).

According to the Government, in May of 2021, Houck allegedly pushed Love only after Love "blocked" Houck in the facility's courtyard. (Gov't 404(b) Mot. 10.) From there, the Government leaps to the conclusion that Houck used force against Love in May because Love was "providing reproductive health services by assisting patients." (*Id*.)

---

*sua sponte*. 760 F.3d at 276. Even if the Government had successfully argued this purpose, however, it would fail a Rule 403 analysis. According to the Government, surveillance video and/or eye-witness testimony will prove that an altercation occurred between Houck and Love. Any probative value this inference could provide is minimal and would be substantially outweighed by its unfair prejudice. *See* Rule 403 balancing discussion at Subsection III.C, *infra*.

7

The Government does not show *how* the prior incident is relevant to the proffered purposes. *See Caldwell*, 760 F.3d at 276. If the Government had shown, not assumed, Houck assaulted Love in May because Love was providing reproductive health services, the May altercation could be probative of Houck's motive in October, particularly in light of his anticipated "defense of others" theory. As the Government describes it, however, the May incident, if anything, tends to show Houck pushed Love because Love restricted Houck's movement while Houck was trying to retrieve his literature. Only an impermissible propensity inference would allow the jury to draw motive or intent from the May incident: Houck pushed Love while he was providing reproductive health services last time, so Houck must have pushed Love because he was doing the same thing this time.

2

The Government next argues the May 2021 interaction is admissible under Rule 404(b) to show Houck's knowledge that Love was a Blackwell Center volunteer. For this purpose, at least, it's marginally relevant.[3] The Government's chain of inferences is sound: Houck's previous interaction with Love at the facility, when Love was volunteering to assist patients and wearing a bright colored vest, tends to make it more likely Houck knew, in October of 2021, that Love was providing reproductive health services when he was again outside the clinic, escorting patients and wearing a bright colored vest.

---

[3] *But see* Subsection III.C, *infra.*

8

C

Before prior act evidence may be admitted under Rule 404(b), *Huddleston's* third prong requires courts to balance the probative value of the proffered evidence against its prejudicial effect under Rule 403. *See Caldwell*, 760 U.S. at 283. Because the prior incident is probative only for knowledge, *see supra,* the Court need not weigh it for purposes of intent or motive.

The probative value of prior act evidence "is diminished where the defendant does not contest the fact for which supporting evidence has been offered." *Caldwell,* 760 F.3d at 283. Houck does not dispute he knew Love was working as a clinic volunteer on October 13, 2021. *See* (Def. 404(b) Mot. 2–3). In fact, Houck recalls he "repeatedly asked [Love] to return to the clinic," acknowledging the affiliation. *Id*. This admission, coupled with the proffered existence of video surveillance and eye-witness testimony, shows the May incident's probative value to establish Houck's knowledge in October is *de minimis*.

On the other hand, as Houck notes, the danger of unfair prejudice is substantially high. The Government is attempting to introduce evidence of a prior, uncharged crime occurring at the same place, against the same alleged victim, in largely the same manner—Houck allegedly shoving Love. In *United States v. Murray,* the Third Circuit found that it "should go without saying" that introducing evidence of an uncharged offense similar to the one charged "poses a high risk of unfair prejudice." 103 F.3d 310, 319 (3d Cir. 1997) (discussing a charge of murder). The Circuit Court reasoned that, in this scenario, the "[e]vidence would have to possess significant probative value to avoid being substantially outweighed by the grave danger of unfair

9

prejudice." *Id.* The substantial similarities between incidents creates the dangerous risk of a propensity inference that substantially outweighs the minimal probative value in reiterating a point Houck concedes and other evidence establishes.[4]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[4] Although Houck only argues it in passing, the admission of such evidence would confuse the jury. Houck does not concede the Government's version of the May 2021 incident, s*ee* (Def. 404(b) Mot. 6), and there is apparently no video footage which shows what happened that day. Allowing testimony about the prior altercation would likely result in a "trial within a trial" over the facts of an incident separate and apart from the charged conduct.