## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-323 (GJP)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK HOUCK,** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## OBJECTIONS TO GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States of America, through the undersigned counsel, hereby responds to Defendant Mark Houck's (the "Defendant") Objections to the Government's Jury Instructions (Doc. 56).

### Response to General Objection

The Government has referred to victim B.L. by his initials throughout the Government's Proposed Jury Instructions in keeping with the Government's standard practice of using the initials of a victim in public filings in order to protect the privacy of the victim. The Government does not object to the use of the victim's full name during the reading of the jury instructions.

### Response to Objection to Government's Proposed Jury Instruction No. 11

The Government's Proposed Jury Instruction No. 11 ("Instruction No. 11") correctly informs the jury that the word "and" in the indictment should be interpreted to mean "or," because when a defendant is charged with two or more ways in which an offense may be committed, proof of any one of the acts can establish his guilt. It is well-established that where a statute is phrased in the disjunctive, the jury instructions may also be phrased in the disjunctive regardless of whether the indictment is phrased in the conjunctive. *United States v. Vampire Nation*, 451 F.3d 189, 204

(3d Cir. 2006) (upholding jury instructions, which were phrased in the disjunctive and tracked the language of the statute, where indictment was phrased in the conjunctive); *United States v. Niederberger*, 580 F.2d 63, 68 (3d Cir. 1978) ("[I]t is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment…Moreover, guilt may be established by proof of any one act named disjunctively in the statute." (internal citations omitted)); *see also United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011) (unpublished) ("We have held that while an indictment employs the conjunctive, jury instructions may employ the disjunctive where, as here, the statute employs the disjunctive."); *United States v. Totoro*, No. CR 15-291, 2017 WL 3189216, at *3 (E.D. Pa. July 27, 2017) (Pappert, J.) ("It is well-established that it is proper to charge in the conjunctive ("and") while proving in the disjunctive ("or")"); *United States v. Ray*, No. 1:12-CR-58, 2022 WL 1444446, at *7 (M.D. Pa. May 6, 2022) (Conner, J) ("[W]hen an indictment charges conduct in conjunctive language, the court's jury instructions may properly employ disjunctive language used by the statute."), *certificate of appealability denied* (Oct. 25, 2022).  Instruction No. 11 informs the jury of this relevant legal principle and does not, as the Defendant asserts, argue the Government's theories of the case.

Further, the Government included highlights, italics, and underlines in Instruction No. 11 for clarity and ease of reading, and the Government will defer to the court as to how the instruction is read to the jury.

**<u>Response to Objection to Government's Proposed Jury Instruction No. 12</u>**

The Government's Proposed Jury Instruction No. 12 ("Instruction No. 12") is an accurate statement of the elements that must be proved for the jury to find the Defendant guilty of Counts One and Two.  The Defendant argues that Instruction No. 12 conflates the "factual" issue of

whether B.L. provides reproductive health services in a facility with the "motive" element of whether the Defendant used force because B.L. provides reproductive health services in a facility. These are not, however, separate elements but components of a single element. *See United States v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000) ("[P]arsing this language, a violation of the Act has three elements.  The first element is the use or threat of force or physical obstruction of a clinic…The Act's second element is that the obstruction [or force or threats] intentionally injure, intimidate, or interfere with persons…[T]he Act's third element…requires that the defendant's actions be taken because…the interfered-with person is or has been, or in order to intimidate such person or any other person or class of persons from, obtaining or providing reproductive health services." (internal quotations, citations, and alteration omitted)).  The individual components of the third element are each separately explained in the Government's proposed instructions, so that the jury can properly evaluate the element as a whole.

The Defendant's argument specifically regarding B.L.'s role as a provider of reproductive services in a facility is addressed in detail below.

### Response to Objection to Government's Proposed Jury Instruction No. 16

The Government's Proposed Jury Instruction No. 16 ("Instruction No. 16") is a correct statement of the third element of the § 248(a)(1) offense charged in Counts 1 and 2.  Specifically, Instruction No. 16 explains that "[a] provider of reproductive health services includes any staff member or volunteer escort who is an integral part of a business where reproductive health services are provided" and that "the use of force against a provider of reproductive health services is prohibited wherever it occurs, whether at the clinic site, or elsewhere, so long as the defendant acted because B.L. was a provider of reproductive health services."

The Defendant argues that Instruction No. 16 is incorrect based on his erroneous assertion that a clinic escort cannot be considered a provider of reproductive health services under the FACE Act. Because the plain language of the statute and relevant case law confirm the accuracy of Instruction No. 16, the Defendant's arguments to the contrary should be rejected. Neither the case law cited by the Defendant nor the legislative history of the FACE Act requires changes to Instruction No. 16.

### A.  The plain language of 18 U.S.C. 248(a)(1) supports Instruction No. 16.

Counts 1 and 2 charge the Defendant with violating 18 U.S.C. § 248(a)(1), which imposes criminal penalties on anyone who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). The term "reproductive health services," in turn, means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system. 18 U.S.C. § 248(e)(5).

Thus, the plain text of the statute makes it clear that the prohibition on using force, threats of force, or physical obstruction to injure, intimidate, or interfere applies with respect to *any person* who is providing reproductive health services. Courts that have opined on the issue of who is encompassed by the definition of a provider of reproductive health services have universally agreed that it includes all persons who are "an integral part of a business in which abortions are performed and pregnant women are counselled." *United States v. Dinwiddie*, 76 F.3d 913, 927 (8th Cir. 1996); *see also United States v. Hill*, 893 F. Supp. 1034, 1039 (N.D. Fla. 1994) ("It

4

appears that Congress was concerned not only with the safety of doctors and nurses, but also with the safety of others who are essential to the provision of clinic services."); *Greenhut v. Hand*, 996 F. Supp. 372, 376 (D.N.J. 1998) ("[N]othing in the statute indicates that it covers only trained providers of reproductive services such as doctors, nurses, or social workers.").

As the Eighth Circuit has explained, "a term appearing in several places in a statutory text is generally read the same way each time it appears." *Dinwiddie*, 76 F.3d at 926 (internal quotations omitted). Given that § 248(a)(3) refers to a "facility" that "provides" reproductive health services, and buildings neither perform abortions nor counsel pregnant women, the court explained that the term "provides" should be interpreted broadly. *Id.* at 927. Just as "a building that houses an abortion clinic 'provides' reproductive-health services because it is an integral part of a business," workers at a reproductive health care clinic – without whom the medical professionals could not do their jobs – similarly provide reproductive health services. *Id.*

Further, all courts that have expressly considered the issue of whether a clinic escort or clinic volunteer provides reproductive health services have unequivocally determined that such escorts and volunteers are covered by the FACE Act. *United States v. Scott*, 975 F. Supp. 428, 433 (D. Conn. 1997) ("FACE protects escorts who are assisting patients and staff in obtaining access to clinics."); *United States v. Hill*, 893 F. Supp. 1034, 1039 (N.D. Fla. 1994) ("[E]scorts are considered an integral part of the functioning of clinics."); *Greenhut v. Hand*, 996 F. Supp. 372, 375-76 (D.N.J. 1998) (explaining that the FACE Act covers "a volunteer at an organization which provided, among other things, counseling services to pregnant women, referrals to medical and mental health professionals, free pregnancy tests, information on child development, and a twenty-four hour hotline for pregnant women").

It is therefore accurate, based on the plain language of 18 U.S.C. § 248 and the relevant case law, to instruct the jury that a "provider of reproductive health services includes any staff member or volunteer escort who is an integral part of a business where reproductive health services are provided." *See* Instruction No. 16. It is further accurate to instruct the jury that, if they find that B.L. "was working, even on a volunteer basis, as a staff member or escort of a facility providing reproductive health services, then [they] may find that he provides reproductive health care." *Id.*

The plain language of the statute also makes it clear that the criminal conduct does not need to occur at the site of the reproductive health services facility in order to fall under the FACE Act's prohibitions. Reproductive health services are defined as services provided in a facility, but the statute prohibits injuring, intimidating, or interfering with a person because that person is *or has been, or in order to intimidate such person…from,* obtaining or providing reproductive health services. Therefore, the victim need not be providing reproductive health services at a facility at the time they are subject to the injury, intimidation, or interference; they must only have provided such services at a facility previously, or the criminal conduct must be aimed at preventing them from doing so in the future. Thus, Instruction No. 16 accurately instructs the jury that "the use of force against a provider of reproductive health services is prohibited wherever it occurs, whether at the clinic site, or elsewhere, so long as the defendant acted because B.L. was a provider of reproductive health services."

**B. Existing case law does not exclude sidewalk activities from the FACE Act.**

The Defendant attempts to argue that sidewalk activities are not covered by the FACE Act based on his mischaracterization of two cases – *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180 (11th Cir. 2002), and *Raney v. Aware Woman Center for Choice*, *Inc.*, 224 F.3d

1266 (11th Cir. 2000).  Neither case supports the Defendant's proposition, and as explained in further detail above, the plain language of § 248(a)(1) clearly militates in favor of the Government's proposed instruction and against that proposed by the Defendant.

The Defendant's reliance on *Lotierzo* is misplaced.  In *Lotierzo*, the plaintiffs – volunteers at the Pregnancy Care Center of Fort Pierce – positioned themselves outside of a facility across the street, A Woman's World Medical Center, and began to provide referral counseling services. The plaintiffs brought a civil FACE Act claim against the defendants, who worked and volunteered at A Woman's World Medical Center, after the defendants tried to stop the plaintiffs from providing these referral counseling services outside of the defendants' facility.  278 F.3d 1180, 1181-82 (11th Cir. 2002).  Because the facts alleged did not show the defendants acted because the plaintiffs were providing reproductive health services at their own Pregnancy Care Center and did not show that the defendants acted in order to intimidate anyone from obtaining or providing reproductive health services at the plaintiffs' Pregnancy Care Center, the district court dismissed the complaint for failure to state a claim, and the Eleventh Circuit affirmed.  *Id.* at 1182-83.  Thus, the holding turned on the intent (or lack thereof) of the defendants, not the fact that the plaintiffs were located on a sidewalk.  This is in stark contrast to the present case, in which the Defendant assaulted B.L. while he was working an official, scheduled volunteer shift at Planned Parenthood – clearly disrupting the services that B.L. was providing at the facility at which he worked.

The second case cited by the Defendant is similarly inapposite.  In *Raney v. Aware Woman Center for Choice*, *Inc.*, plaintiff Raney appealed from the district court's grant of summary judgment to the defendants on his civil FACE Act claim.  224 F.3d 1266, 1268 (11th Cir. 2000). The crux of Raney's complaint was that local police had, on three occasions, removed him from a clinic.  *Id*.  The police, however, had removed him because he was prohibited by a state court

injunction from being on the premises.  In addition to rejecting Raney's claim that the police officers were acting as agents of the defendants when they removed him, the Eleventh Circuit further explained that Raney could not state a cause of action under the FACE Act because the Act requires that the person bringing a civil FACE action be someone seeking or providing reproductive health services in a facility.  *Id.* at 1268-69.  By standing on the sidewalk in front of the clinic, Raney could not have been providing reproductive health services in a facility, as he was not remotely affiliated with the clinic that was providing medical, surgical, counseling, or referral services at all.  *Id.* at 1269.  *Raney* does not stand for the proposition that the FACE Act excludes activities occurring on a sidewalk; rather, it stands for the non-remarkable proposition that an individual bringing a FACE action must be a person engaged in seeking or providing reproductive health services.

Therefore, the Defendant's assertion that prior court of appeals decisions exclude sidewalk activities from the FACE Act is unfounded and has no bearing on the accuracy of Instruction No. 16.

### C.  The legislative history of § 248(a)(1) does not exclude present "clinic escorts" from FACE Act coverage.

The Defendant forwards an unpersuasive argument that the legislative history of the FACE Act cuts against treating clinic escorts as persons providing reproductive health services.  The Court need not consider the legislative history at all because the text is not ambiguous.  If, however, it decides to canvass that history, the Court should still use Instruction No. 16.  Read as a whole, the legislative history supports the Government's, not the Defendant's, proposed instruction.

When, as here, the plain language of the statute is unambiguous, there is no need to consider the legislative history.  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others.  We

have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal citations omitted)); *Clean Air Council v. United States Steel Corp.*, 4 F.4th 204, 210 (3d Cir. 2021) ("The legislative history cannot cloud clear text."); *United States v. Kouevi*, 698 F.3d 126, 133 (3d Cir. 2012) ("Legislative history is only an appropriate aid to statutory interpretation when the disputed statute is ambiguous.").  Thus, the Court may dispose of this issue without examining the proffered legislative history.

However, to the extent the Court wishes to examine this history, the Defendant's argument still fails.  The Defendant asserts that after the FACE Act was reported out of the respective House and Senate committees, the bill was amended such that "clinic escorts" were no longer covered by the Act.  The Defendant makes much of a short exchange on the Senate floor between Senator Durenberger and Senator Kennedy prior to the FACE Act's initial passage in the Senate.  In that exchange, Senator Kennedy states in part, "Demonstrators, clinic defenders, escorts, and other persons not involved in obtaining or providing services in the facility may not bring…a cause of action."  139 Cong. Rec. S15682.

However, the term "escort" as it was used at the time Senator Kennedy made this statement contemplates vastly different activities than those in which B.L. was engaged.  It described persons, often referred to as clinic "defenders" and often wholly unaffiliated with reproductive health facilities, engaging in what were essentially counter-protesting activities.  These activities included, among other things, "round[ing]…up and neutraliz[ing]" protestors and "isolat[ing] them…by getting them to lose their cool, look foolish, argue with us."  *See* 139 Cong. Rec. S15722, Clinic Defense: A Model.  In the very record the Defendant himself cites, Senator Kennedy

clarified the individuals sought to be excluded under the term "escort" by stating, "If demonstrators outside a clinic engage in pushing, shoving, or other forceful conduct against each other, neither side can sue under this law."  139 Cong. Rec. S15659.

Such conduct is a far cry from the activities of B.L., a Planned Parenthood volunteer of over 30 years who was tasked with escorting potential patients to the clinic.  At the time of the incident, B.L. was working an assigned volunteer shift and was wearing a Planned Parenthood vest designating him as a volunteer at the clinic.  He was not a protestor or a counter-protestor who took it upon himself to aid an individual seeking reproductive health care.  He is thus very differently situated from the kinds of "clinic escorts" the legislative history indicates some members of Congress intended to exclude from the FACE Act.  The Defendant's assertion that clinic escorts are not covered by the FACE Act has no merit and warrants no changes to Instruction No. 16.

**<u>Response to Objection to Government's Instruction 17</u>**

The Government's Proposed Jury Instruction No. 17 ("Instruction No. 17") accurately instructs the jury regarding the factors to consider in determining whether the Defendant acted as he did *because* B.L. was or had been providing reproductive health services.  Specifically, Instruction No. 17 reflects Supreme Court precedent outlining the but-for causation standard.  *See Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1739 (2020) (explaining that "[in] the language of the law…[the] 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation").

First, the Government's Proposed Jury Instruction No. 17 explains that in order for third element to be satisfied, the jury need not find that the Defendant acted *solely* because B.L. was a provider of reproductive health services, but the Government does need to show that B.L.'s

10

provision of reproductive health services "played a determinative role in the defendant's decision to assault B.L." Instruction No. 17 then rephrases the standard to instruct the jury that they must find that, "despite any other reason that the defendant had for the assault, the assault would not have taken place without the incremental effect that B.L. was or had been providing reproductive health services, or that B.L. would provide such services in the future." Finally, the Government's Instruction No. 17 states that "[s]o long as B.L.'s role as a provider of reproductive healthcare services was one *but-for* cause of his conduct, that is enough to satisfy the third element. A *but-for* cause does not mean the sole cause or even a primary cause."

It is well-established that "[o]ften, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. It therefore follows that "the jury need not find that the Defendant acted *solely* because B.L. was a provider of reproductive health services," and it is in keeping with the law to instruct the jury that "[a] *but-for* cause does not mean the sole cause or even a primary cause." *See* Instruction No. 17.

In an opinion by Justice Scalia, the Supreme Court explained that where multiple factors are at issue, but a result would not have occurred without the "incremental effect" of a certain factor, that factor is a but-for cause of the result – in other words, it is the "straw that broke the camel's back." *Burrage v. United States*, 571 U.S. 204, 211 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." (internal citations omitted)). It therefore follows that "[t]he government must only prove that because B.L. was or had been providing reproductive health services, it played a determinative role in the defendant's decision to assault B.L." *See* Instruction No. 17. Further, the Government rightly seeks to instruct the jury that it must find that, "despite any other

reason that the defendant had for the assault, the assault would not have taken place *without* the incremental effect that B.L. was or had been providing reproductive health services, or that B.L. would provide such services in the future." Instruction No. 17 (emphasis added). This reflects the Supreme Court's "change one thing" test. *Bostock*, 140 S. Ct. at 1739 ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.").

The Defendant erroneously argues that Instruction No. 17 conflates "but-for" and "mixed motive" causation. Under the standard Justice Scalia articulated in *Burrage*, these two things fit comfortably together; they are not two distinct concepts. The Defendant also argues that Instruction No. 17 omits the Government's burden to prove the Defendant's subjective motivation. However, the jury could not find, consistent with Instruction No. 17, that B.L.'s position as a provider of reproductive health services "played a determinative role" in the Defendant's decision or that it was one of possibly multiple reasons for the Defendant's actions without considering – and without the Government proving – the Defendant's subjective motivation. The Defendant's arguments should therefore be rejected, as the Government's proposed instructions mirror the language used by the Supreme Court to describe the but-for causation standard.

Respectfully submitted,

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay Patel*
SANJAY H. PATEL
Trial Attorney
Criminal Section, Civil Rights Division
4 Constitution Square

150 M St. NE, 7.121
Washington, D.C. 20530
Email: sanjay.patel@usdoj.gov

ASHLEY MARTIN
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
Email: ashley.martin2@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was delivered on January 22, 2023, to the CM-ECF system of the U.S. District Court for the Eastern District of Pennsylvania for electronic delivery to all counsel of record.

*/s/ Sanjay Patel*
Sanjay H. Patel
Trial Attorney, Civil Rights Division
United States Department of Justice